SAMUEL J. BALKIN *vs.* FRANK M. KATZ, INC.

Norfolk.    May 4, 1977. — September 21, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & LIACOS, JJ.

*Contract,* Consideration, Pension.

Evidence that about fourteen years after the plaintiff was first employed as a sales representative by the defendant company its president promised the plaintiff a pension for life when he retired, and requested him to "go out and . . . get . . . top rated accounts," and that the plaintiff continued to work for six years without contractual obligation and did bring in additional accounts would have warranted findings that there was consideration for the pension promise and reliance thereon by the plaintiff; it was error to direct a verdict for the defendant. [420-422]

CIVIL ACTION commenced in the Superior Court on February 13, 1975.

The case was tried before *Mitchell*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Roger S. Davis* for the plaintiff.
*Kirk S. Giffen* for the defendant.

HENNESSEY, C.J.    The plaintiff, Samuel J. Balkin (Balkin), New England sales representative of the defendant, Frank M. Katz, Inc. (company), commenced this action in the Superior Court in Norfolk County seeking to recover the value of a pension which he claims was promised

to him by the company's president[1] to take effect on his
retirement. The case was tried before a jury; at the close
of all the evidence the trial judge granted the company's
motion for a directed verdict on the sole and express
ground of lack of consideration. Balkin appealed from this
judgment, and the Appeals Court summarily affirmed the
judgment below. We granted Balkin's application for fur-
ther appellate review. We reverse the judgment below.

The sole issue before us is whether there was sufficient
evidence of consideration to require the trial judge to sub-
mit the case to the jury.[2] Since the case comes to us on
the defendant's motion for a directed verdict, we summa-
rize the evidence most favorable to the plaintiff. *H.P. Hood
& Sons* v. *Ford Motor Co.*, 370 Mass. 69, 71 (1976). The
evidence presented by Balkin consisted solely of his own
testimony. Balkin testified that he had been employed by
the company for approximately twenty-one years, from
1952 until his retirement in 1973, as its exclusive New
England sales representative.[3] His employment was ter-
minable at will. He testified that he had built up the busi-
ness in his territory from scratch to a point where at one
time his sales exceeded $400,000 annually. In early 1966,
or 1967,[4] when Balkin was sixty-six years old, he received
the company's "Most Valuable Salesman" award for his

---

[1] The record is inconsistent as to the year that this allegedly oc-
curred; both 1965 and 1967 are stated in various parts of the record.

[2] The company denied the allegation that the pension promise was
ever made, but this issue is not before us. Several other issues raised
in the proceedings below are also not properly before us now, for ex-
ample, whether Balkin was an employee of the company or an inde-
pendent contractor and whether, if such an agreement was made and
there was consideration for the promise, Balkin performed his side of
the agreement.

[3] The defendant introduced in evidence an undated agreement be-
tween the plaintiff and the defendant apparently effective in 1960 under
which the plaintiff was appointed an "independent sales representa-
tive." The agreement established the commissions payable to the plain-
tiff and provided for a variable weekly draw as an advance against the
commissions earned. The agreement was terminable at will by either
party on notice.

[4] Again, the record is unclear as to which year is asserted.

sales performance during a year in which he succeeded in acquiring for the company a substantial national account despite his undergoing two major operations during that year. Following the presentation of this award, Balkin had a conversation with the company's president, Frank Katz (Katz). Balkin testified that Katz told him that because of the devotion and dedication that he had put into creating new business for the defendant company, Balkin would receive a pension of $100 a week for the rest of his life when he retired, the same amount being paid to another retired sales representative. During that conversation, Katz further requested that Balkin "go out and ... see if you can get ... top rated accounts, and keep on looking for those big accounts that can bring in that big volume of business." Balkin continued to work for the company for six years and did bring in additional accounts. Balkin testified that because the market for the company's products generally declined after 1967, he worked harder and longer than before and also performed the additional service of assisting the credit department in collecting accounts although he had no duty to do so. He retired in 1973, and the company refused to pay him the pension.

While this case is not free of doubt, we think that Balkin's continued employment for six years after the alleged pension promise is sufficient evidence of consideration to allow the case to go to the jury.[5] See, e.g., *Marine Contractors Co.* v. *Hurley*, 365 Mass. 280, 286 (1974); 1 S. Williston, Contracts § 102A (3d ed. 1957). Professor Williston has stated the general rule that "[t]he weight of authority holds that where the promise of the pension ... is made in advance of work to encourage faithful service, the offer becomes a binding obligation upon completion of such service." 1 S. Williston, Contracts § 130B (3d ed.

---

[5] While the pension promise was alleged to have been made in Illinois, neither party brought the law of Illinois to the attention of the court below. We will therefore proceed according to the law of Massachusetts which is, in any event, the more appropriate course, the making of the promise in Illinois at an annual sales conference being a mere fortuity without relation to the subsequent conduct of the parties.

1957). We have followed a similar path in our cases with the additional requirement that the continued employment must be in reliance on the promised benefit. See, e.g., *Patton* v. *Babson's Statistical Organization, Inc.,* 259 Mass. 424, 427 (1927); *Zampatella* v. *Thomson-Crooker Shoe Co.,* 249 Mass. 37, 39 (1924). Cf. *Graphic Arts Finishers, Inc.* v. *Boston Redevelopment Auth.,* 357 Mass. 40 (1970). While there was no direct evidence of reliance, there was testimony from which the jury could infer reliance, principally from Balkin's testimony, that he continued to work for six years without contractual obligation to do so although his health had not been good and that he performed additional services which he had no duty to perform. The question of reliance is inherently subjective and should have been submitted to the jury if there was any evidence to support such a finding in accord with our established directed verdict standard. See, e.g., *DiMarzo* v. *S. & P. Realty Corp.,* 364 Mass. 510, 514 (1974); *Chase* v. *Roy,* 363 Mass. 402, 404 (1973); *Raunela* v. *Hertz Corp.,* 361 Mass. 341, 343 (1972); *Calderone* v. *Wright,* 360 Mass. 174, 175 (1971); *Howes* v. *Kelman,* 326 Mass. 696, 697 (1951). Had it been the jury who concluded that Balkin did continue to work in reliance on the pension promise, the consideration necessary to support the contract would be present.

Accordingly, the judgment of the Superior Court is reversed, and the case is remanded for a new trial.

*So ordered.*