**In re JOHNSON STEEL & WIRE COMPANY, INC., Debtor.**

**Bankruptcy No. 4–82–00706–G.**

United States Bankruptcy Court, D. Massachusetts.

May 23, 1986.

James Queenan, Celeste P. Duffy, Bowditch & Dewey, Newton, P.C., Worcester, Mass., for debtor Johnson Steel.

Mark I. Zarrow, Yagjian, Zarrow, George, Lian & Fox, Worcester, Mass., for John H. Gaucher.

Howard N. Gorney, Seder & Chandler, Worcester, Mass., for William A. Biliouris, Robert L. Brown and Joseph G. Kirkpatrick.

## MEMORANDUM

JAMES A. GOODMAN, Bankruptcy Judge.

This matter is before the Court on an objection by the debtor, Johnson Steel &

---

Wire Company, Inc. (the "Debtor" or "Johnson Steel") to claims filed by John H. Gaucher, William A. Biliouris, Joseph G. Kirkpatrick, William P. Simmerman and Robert L. Brown (collectively the "Claimants"). The Claimants have filed motions for partial summary judgment which have been previously denied by the Court. At a hearing on March 25, 1986, the Court requested that the parties submit pre-trial memoranda, an agreed statement of facts having been previously submitted by the parties. The Court stated that it would review the agreed statement of facts and the memoranda, together with the relevant statutory and case law and determine whether testimony from witnesses would be necessary or the case could be decided on the pleadings.

## FACTS

The Claimants are all former employees of the Debtor who had retired and were, with one exception, receiving payments under the company's pension plan at the time the company terminated the plan in September, 1982.[1] After termination of the pension plan, the Pension Benefit Guaranty Corporation ("PBGC") began paying monthly benefits to the Claimants. Pursuant to a formula under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1401 ("ERISA"), the benefits received by the Claimants are, in each case, less than the benefits they were receiving, or would have received, under the pension plan. The Claimants have filed claims against the Debtor for the value of the difference between the monthly pension payments they were previously receiving under the plan and the monthly pension payments they are currently receiving from the PBGC.

Johnson Steel had two different pension plans, one of which covered non-union employees, including the Claimants. The plan which covered the Claimants was entitled "Retirement Income Plan of Johnson Steel & Wire Company, Inc. as Amended and Restated Effective February 17, 1977" (the "Plan"). In connection with the Plan, Johnson Steel executed a trust agreement which set up a trust (the "Trust") to fund the Plan. Both the Plan and the Trust were successor documents to a pension plan and pension trust maintained by Johnson Steel for the benefit of the Claimants.

From time to time during the existence of the predecessor pension plan, Johnson Steel issued booklets concerning the pension plan to be mailed to plan participants. A copy of one such booklet was submitted to the Court ("Exhibit F"). Johnson Steel also posted notices on its bulletin board stating that the booklets were available at the company's office and that a copy of the pension plan was also available to be read at the office. Johnson Steel also mailed to the Claimants, and others, copies of two annual summary reports of the plan.

Johnson Steel obtained from the Internal Revenue Service a partial waiver with respect to its contributions to the two pension plans for the year ending December 31, 1979. The company also obtained a waiver with respect to its entire contribution to the two plans for the year ending December 31, 1980. Pursuant to the terms of the waivers, the contributions waived were payable over a period of 15 years, with the first payment due in September, 1982.

Johnson Steel's contributions to the two pension plans for the year ending December 31, 1981 were payable on September 15, 1982. The Debtor applied to the IRS for a waiver with respect to pension plan contributions for that year. No action was taken on the application because the company terminated the pension plans, by giving the statutory ten-day notice, dated September 2, 1982, to the PBGC, and, on September 14, 1982, filed its Chapter 11 petition.

The PBGC became trustee of the Plan following its termination in September, 1982, and later filed, in the Bankruptcy Court, six proofs of claim against Johnson

---

1. Claimant William A. Biliouris had retired, vested and qualified for benefits, but payment of those benefits had not yet begun when the pension plan was terminated.

Steel. The Debtor's First Amended Plan of Reorganization contains provisions dealing with Johnson Steel's indebtedness to the PBGC. These provisions discharged the company's liability for all contributions to both plans which were accrued and unpaid as of September 13, 1982 and discharged Johnson Steel of all other liability to the PBGC. The Plan of Reorganization was confirmed on July 1, 1985.

The funds in the Trust at the time of the Plan's termination were insufficient to continue paying the Claimants the same monthly benefits they had been receiving prior to the termination. This deficiency was the result of both the termination of the Plan and Johnson Steel's failure to pay all accrued contributions to the Plan.

Pursuant to ERISA, the PBGC guarantees to the Claimants payment of their pension benefits, subject to certain statutory limits, notwithstanding the deficiency in the assets of the Trust. The statutory maximum monthly payments guaranteed by the PBGC are less than the amounts the Claimants were receiving in accordance with the terms of the Plan. The Claimants are now receiving the lesser guaranteed amounts. The monthly pension payments received by the Claimants prior to the Plan's termination, and those which they are now receiving, are as follows:

| Name of Claimant | Age as of 9/13/82 | Previous Monthly Pension | Present Monthly Pension | Monthly Difference |
|---|---|---|---|---|
| William A. Biliouris | 57 | $1,166.89 | $ 786.98 | $379.91 |
| Robert L. Brown | 62 | $1,375.49 | $1,114.89 | $260.60 |
| John H. Gaucher | 59 | $1,528.98 | $ 883.63 | $645.35 |
| Joseph G. Kirkpatrick | 58 | $1,064.28 | $ 791.58 | $272.70 |
| William P. Simmerman | 57 | $1,170.74 | $ 759.37 | $411.37 |

The value, as of September 13, 1982, of the difference between the monthly pension paid to each of the Claimants prior to the Plan's termination and the monthly pension paid and to be paid to each of them after the Plan's termination, is as follows:

| Name of Claimant | Actuarial Value of Monthly Difference |
|---|---|
| William A. Biliouris | $ 27,328 |
| Robert L. Brown | 7,651 |
| John H. Gaucher | 49,676 |
| John G. Kirkpatrick | 16,941 |
| William P. Simmerman | 31,682 |
| | $133,278 |

### DISCUSSION

Sections 7.2 and 14.1 of the Plan read as follows:

*Section 7.1—Employer Contributions*
Contributions toward the cost of benefits and expenses under the Plan shall be made by the Company to the Trustee or Trustees under its Trust Agreement or Trust Agreements or, in the case of insured benefits, to the Insurance Trustee at such times during each plan year and in such amounts as the board of directors of the Company shall determine. Nothing contained in this Plan or otherwise shall be construed as giving any person any right to require the Company to make any payment hereunder except with respect to contributions which have been specifically accrued as liabilities of that respective Company and then are past due.

*Section 14.1—Procedure for Terminating*

By action of the Board of Directors, the Company may at any time terminate the Plan in its entirety. By action of its Board of Directors, the Company may at any time terminate the Plan insofar as it affects the employees of the Company. Upon termination of the Plan, the rights of each Participant affected by such termination to benefits accrued to the date of such termination shall become fully vested and be nonforfeitable to the extent then funded and subject to the priorities set forth in Section 14.2.

Section 10.6 of the Trust Agreement states:

*10.6—Limited Liability*

The sole source of payment of the benefits to participants under the Plan and this Trust Agreement, shall be the assets of the trust created under this Agreement and no company, committee, or officer, director, member or agent thereof shall be liable for any lack of funds for such benefits, except as prescribed by law or by the terms of this Agreement.

Johnson Steel contends that these provisions make the Trust the sole source of benefit payments and exempt the Company from any liability except for contributions to the Trust which have accrued but remain unpaid by the Debtor. Because of this limitation of its liability, Johnson Steel requests that this Court disallow the claims against the Debtor for the difference between the benefits as provided for in the pension plan and as guaranteed by the PBGC.

The claimants argument is a two-fold one. First, they contend that equitable considerations and case law preclude an employer from limiting its liability to a pension plan in this manner. Second, they contend that even if their first argument fails, these provisions should not be applicable in the instant case because the Claimants were not aware of their existence.

The Claimant's first argument is largely based upon the case of *Hoefel v. Atlas Tack Corp.*, 581 F.2d 1 (1st Cir.1978). In that case employees brought suit against a former employer to recover pension benefits allegedly due them under a pension plan which had been terminated by the employer. The Court of Appeals held that, under Massachusetts law, a promise by an employer of a pension constitutes an offer which, upon performance of the required service by the employees, becomes a binding obligation. The court went on to say that, although the employer had reserved the right to "change, suspend or discontinue the plan at any time," public policy required that pension plans were to "be construed, where possible to avoid the forfeiture of rights which an employee, through years of service has earned." The Court cited the passage of the ERISA legislation as evidence of that public policy.[2] Relying in part on the fact that the employer had misled the employees as to the effect of a change in the way the plan was funded, the Court found that the employer had breached its obligation to the employees by terminating the plan.

The *Hoefel v. Atlas Tack* case is distinguishable from the instant case in a number of ways. The primary difference is that the public policy concerns of the Court in *Hoefel* have been largely addressed by ERISA. In *Hoefel* the Court was concerned that although the employees had reasonably believed that they were going to receive a pension for life, the termination of the pension plan by the employer meant that the employees would receive no benefits whatsoever. In the instant case, the Claimants' benefits have been reduced to the amounts statutorily guaranteed by the PBGC, rather than being eliminated entirely.

The Claimants are correct in their assertion that the provisions of ERISA do not preclude them from seeking to recover directly from Johnson Steel the difference between the pension payments guaranteed by the PBGC and those provided in the Plan. *Murphy v. Heppenstall Co.*, 635

---

**2.** The pension plan in *Hoefel v. Atlas Tack,* 581 F.2d 1 (1st Cir.1978) had been terminated prior to the effective date of ERISA.

F.2d 233 (3rd Cir.1980). It is clear, however, that "Congress plainly did not intend to prevent employers from limiting their potential direct liability to their employees. There is not a word in the statute or its legislative history suggesting that Congress ever intended to outlaw the use of such clauses." *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 385, 100 S.Ct. 1723, 1738, 64 L.Ed.2d 354 (1980). In fact, since the use of clauses limiting employer liability "has unquestionably contributed to the growth of private pension plans, their prohibition would be inconsistent with Congress repeatedly expressed intent to encourage the maintenance of pension plans". *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. at 385, footnote 35, 100 S.Ct. at 1738, footnote 35.

■ The provisions of the Plan and the Trust Agreement clearly limit the Debtor's direct liability to its employees. *See, Murphy v. Heppenstall Co.*, 635 F.2d 233, 235 (3rd Cir.1980) (wherein provisions purporting to limit employer's liability were less than clear). Unlike in *Hoefel v. Atlas Tack*, 581 F.2d 1 (1st Cir.1978), there are no allegations that Johnson Steel attempted to mislead the Claimants, or any other employees, about these provisions, or any other provisions of the Plan.

■ The Claimants contend that the provisions limiting the Debtors liability to them under the Plan should not be binding because the Claimants were not aware of their existence. It is undisputed, however, that the Plan and the Trust Agreement were available for examination by the employees or their representatives. The Debtor informed the employees that these documents were available for their examination. Given the length and complexity of the document and the large number of plan participants, it would be unreasonable to require the Debtor to take additional steps to inform the employees of the provisions of the Plan. The fact that the Claimants did not familiarize themselves with the Plan and the Trust Agreement does not mean that they are not bound by the provisions contained therein.

Accordingly, the Court shall, concurrent with this memorandum, enter an order disallowing these claims.