36 F.3d 1089
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Kevin J. SHEEHAN, ET AL., Plaintiffs, Appellants,
v.
FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Bank
of New England, N.A., in Liquidation, Defendant, Appellee.
 No. 94-1054
 United States Court of Appeals,
First Circuit.
 September 26, 1994
 
 Appeal from the United States District Court for the District of Massachusetts [Hon. William G. Young, U.S. District Judge ] Selya, Cyr and Boudin, Circuit Judges.
 
 
 1
 Lee H. Kozol, with whom David A. Rich and Friedman & Atherton were on brief for appellants.
 
 
 2
 Jeannette E. Roach, Counsel, with whom Ann S. Duross, Assistant General Counsel, Colleen B. Bombardier, Senior Counsel, Maria Beatrice Valdez, Counsel, Leila R. Kern, Maryaustin Dowd, and Kern, Hagerty, Roach & Carpenter, P.C., were on brief for appellee.
 
 
 3
 D.Mass.
 
 
 4
 AFFIRMED.
 
 
 5
 Per Curiam.
 
 
 6
 Plaintiff-appellants, former employees of the Financial Products Services Group (the Group) of the Bank of New England (BNE), initiated a class action for breach of contract based on BNE's failure to approve bonuses under a plan designed to encourage Group personnel to generate greater revenues for BNE. The Federal Deposit Insurance Corporation (FDIC), as receiver for BNE, later assumed responsibility for defense of the action.
 
 
 7
 The class action plaintiffs were engaged in providing sophisticated securities processing and accounting services to institutional investors in behalf of BNE. In late 1988 or early 1989, plaintiff-appellant Kevin J. Sheehan, officer-in-charge of the Group, discussed with BNE officials the establishment of an incentive plan for the Group employees. In November of 1989, Sheehan received a copy of the incentive plan (the Plan), which included a cursory formula for funding a bonus pool for distribution among Group employees. The Plan empowered Sheehan to determine awards to individual Group employees, "subject to the approval of the SBU [Strategic Business Unit] Head, the Chairman of BNE, N.A. and the Directors' Compensation Committee."[1]
 
 
 8
 In 1988, and thereafter, BNE experienced severe financial losses which eventually led to the issuance of a Federal Reserve Board Cease and Desist order prohibiting, inter alia, bonus payments to BNE employees absent advance approval by the Federal Reserve. The only bonuses BNE ever made under the Plan were disbursed to Sheehan and the Group employees in November 1989, based on their performance for the first six months of 1989.
 
 
 9
 On November 28, 1990, the present action was commenced against BNE in Massachusetts Superior Court. On January 6, 1991, BNE was declared insolvent. After FDIC was appointed receiver, the action was removed to the United States District Court for the District of Massachusetts and the parties filed cross-motions for summary judgment. Ultimately, the district court granted summary judgment in favor of FDIC, and plaintiffs appealed.
 
 
 10
 Summary judgment rulings are reviewed de novo under the same criteria incumbent on the district court in the first instance. Velez-Gomez v. SMA Life Assur. Co., 8 F.3d 873, 874-75 (1st Cir. 1993). "Summary judgment is appropriate where 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " Gaskell v. The Harvard Coop. Soc'y, 3 F.3d 495, 497 (1st Cir. 1993) (quoting Fed.R.Civ.P. 56(c)). We review the evidence, and draw all reasonable inferences, in the light most favorable to the party challenging summary judgment. Velez-Gomez, 8 F.3d at 875.
 
 
 11
 The central question presented on appeal is whether the failure of BNE management to approve Plan bonuses awarded by Sheehan for the periods July 1-December 31, 1989, and January 1-May 26, 1990, constituted a breach of contract under Massachusetts law.[2] Plaintiffs concede that the Plan did not restrict BNE management's discretion to withhold approval of bonuses. See Additional Provision # 2. Nevertheless, as Massachusetts law implies a covenant of good faith and fair dealing in all contracts, Anthony's Pier Four, Inc. v. HBC Associates, 583 N.E.2d 806, 820 (1991), plaintiffs insist that their right to receive bonuses vested in accordance with the terms of the bonus formula set out in the Plan. They rely on Hoefel v. Atlas Tack Corp., 581 F.2d 1, 7 (1st Cir. 1978) (applying Massachusetts contract law), cert. denied, 440 U.S. 913 (1979), where an employer expressly reserved the right to "change, suspend or discontinue ... [its pension] plan at any time," but attempted to revoke the plan long after the plaintiff employees had retired and their pension benefits had vested. Id. at 4. Hoefel held that the former employees' right to receive their pensions, as delayed compensation, vested as soon as the employees had met all the pension eligibility requirements imposed by their pension plan. Id. at 5.
 
 
 12
 Similarly, these plaintiffs urge that their right to Plan bonuses vested in accordance with the formula prescribed in the Plan, see supra p. 2, notwithstanding the express provision that all bonus awards were subject to approval by BNE management. Further, again relying on Hoefel, 581 F.2d at 7 ("We fail to see how Atlas' financial difficulties can excuse its performance of its contractual obligations to its former employees."), and notwithstanding Additional Provision # 2, see supra p. 4, plaintiffs make the related claim that BNE's financial condition was an insufficient basis, as a matter of law, for withholding bonuses.
 
 
 13
 Hoefel is inapposite, however, since it simply upheld the retired employees' right to continue to receive their pensions after all pension-vesting conditions imposed by the terms of their pension plan had been met. Here, the Plan expressly reserved to BNE the exclusive power to approve all bonuses in the first instance, which plainly precluded any bonus vesting under the Plan prior to approval by BNE management. Because it is undisputed that BNE management approved no bonuses after November 1989, plaintiffs cannot rely on Hoefel as support for their claim to unapproved Plan bonuses. See Northern Heel Corp. v. Compo Industries Inc., 851 F.2d 456, 461 (1st Cir. 1988) ("Under Massachusetts law, contracting parties may provide that performance is not required unless and until stipulated conditions precedent have been met.") (applying implied covenant of good faith).
 
 
 14
 The right to withhold approval of bonuses under the Plan is governed by the terms of the contract, subject to an implied covenant of good faith and fair dealing. Anthony's Pier Four, 583 N.E.2d at 820 ("[T]he rule is clear in Massachusetts that every contract is subject to an implied covenant of good faith and fair dealing."). Since the terms of the Plan expressly reserved to BNE management the unrestricted discretion to withhold approval and plaintiffs generated no trialworthy issue as to whether bonuses were withheld in "bad faith," we conclude that the district court correctly granted summary judgment in favor of FDIC.[3]
 
 
 15
 Under Massachusetts law, "[i]t is ... bad faith to use discretion 'to recapture opportunities forgone on contracting' as determined by the other party's reasonable expectations-to refuse 'to pay the expected cost of performance.' " Id. at 473 (quoting Steven J. Burton, Breach of Contract and the Common Law Duty to Perform in Good Faith, 94 Harv. L. Rev. 369, 369, 372-373 (1980)). Notwithstanding the contrary terms of the Plan, and even though they disclaim reliance on oral assurances that bonuses would be approved despite BNE's financial difficulties, see Reply Brief at 3-4 and 10-11, plaintiffs implausibly contend that it was reasonable to expect that BNE would forego its right to withhold bonuses during difficult financial times. Plaintiffs insist that BNE retained no discretion to disapprove bonuses except for inadequate employee performance. Thus, say plaintiffs, BNE's disapproval of their bonuses on the ground that BNE was experiencing serious financial problems constituted bad faith, a breach of the implied covenant of good faith and fair dealing. We do not agree.
 
 
 16
 First, the Plan, see Additional Provision # 2, in no way restricted the power of BNE management to withhold bonus approval. Second, in these circumstances, a trialworthy claim of "bad faith" or "unfair dealing" did not arise merely as a consequence of BNE's decision to withhold approval of bonuses based on nonpretextual grounds explicitly identified in the Plan.[4] Thus, plaintiffs failed to present an adequate evidentiary basis for a reasonable inference of "bad faith." Cf. Cheney v. Automatic Sprinkler Corp. of America, 385 N.E.2d at 961, 966 (Mass. 1979) (finding no breach of implied covenant of good faith and fair dealing where employer withheld earned bonuses for reasons authorized in bonus plan).
 
 
 17
 Absent a cognizable basis for inferring bad faith, the thrust of plaintiffs' position on appeal is to urge revision of the Plan to preclude BNE's reliance on its expressly reserved right to adjust bonuses in response to the financial conditions that ultimately led to its demise. Leaving aside that there has been no showing that BNE could have obtained Federal Reserve Board approval for disbursing bonuses in light of its deteriorating financial condition, see supra at p. 2, the role of contract scrivener is one for the parties, not the court. Cf. Northern Heel, 851 F.2d at 466 (declining to rewrite agreement "to include a representation which the parties were mutually content to let slide in the course of their negotiations."). And it is too late in the day to deny FDIC the benefit of a valid defense expressly reserved to BNE under the terms of the Plan. See ITT Corp v. LTX Corp, 926 F.2d 1258, 1261 (1st Cir. 1991) (applying Massachusetts parol evidence rule). Accordingly, the judgment must be affirmed.
 
 
 18
 Affirmed. The parties are to bear their own costs.
 
 
 
 [1]
 As officer-in-charge, Sheehan likewise was eligible for bonus awards subject to BNE management approval
 
 
 [2]
 For present purposes, we indulge the parties' mutual assumption that the Plan was a valid contract, without indicating any view as to the correctness of their assumption in light of Massachusetts law
 
 
 [3]
 As the district court noted, the bonus-approval discretion retained by BNE distinguishes this case from Fortune v. National Cash Register, Inc., 384 N.E.2d 1251, 1257 (Mass. 1977) (holding that employer acted in bad faith by firing an "at will" employee to prevent the employee from receiving a commission due the employee). See also Maddaloni v. Western Mass. Bus Lines, Inc., 438 N.E.2d 351, 354 (Mass. 1982) (same). There is no evidence that BNE withheld bonus approval for other than the stated financial reasons, nor that the financial losses which led to its failure were not serious
 
 
 [4]
 It is undisputed that the parties knew that BNE had been experiencing serious financial problems since 1988. Moreover, in January 1990, within a month after Sheehan determined bonus awards for the second half of 1989, and well before he did so for any portion of 1990, Additional Provision # 6 was adopted pursuant to Additional Provision # 3 (empowering BNE management to alter, amend, suspend or discontinue the Plan or any award) to specify that any award or group of awards could be adjusted by senior management based, inter alia, on "prevailing financial conditions."