# DECISIONS

OF THE

## SUPREME JUDICIAL COURT

OF

### MASSACHUSETTS

---

THE ATLANTIC TRANSPORTATION COMPANY, INCORPORATED,
*vs.* ALEXANDER SHIPPING COMPANY, INC.

Suffolk.    June 29, 1927. — July 20, 1927.

Present: RUGG, C.J., PIERCE, CARROLL, & SANDERSON, JJ.

*Mortgage,* Of ship. *Sale,* Of ship. *Ship. Personal Property. Corporation,* Officers and agents, Shareholder. *Estoppel. Conflict of Laws. Equity Pleading and Practice,* Finding by judge.

A ship being treated as personal property by the courts of common law, the transfer of its title and the form and validity of mortgages of it, except so far as modified by controlling statutes, are to be decided by the common law touching sales of personal property.

A stockholder, officer and director of a corporation in January, 1926, in consideration of shares of capital stock of the corporation, executed, acknowledged and delivered to the corporation a bill of sale of a ship, with full covenants of warranty and no mention of encumbrances. The corporation's treasurer, later learning of a recital in a deed to the stockholder that the ship was subject to a mortgage to another corporation, interviewed an officer of that corporation, who had full power to represent it, and by him was falsely informed that such recital was a mistake, as the debt had been paid before any mortgage was drawn; and later that mortgage was delivered to the stockholder and by him to the vendee corporation's treasurer without ever having been recorded. The vendee corporation thereupon in good faith recorded its bill of sale under the Federal ship mortgage act and made large outlays in repairing the ship and preparing her for service. Later the alleged mortgagee

sought replevin of the ship and to foreclose its mortgage, and the vendee corporation by a bill in equity sought to enjoin such proceedings. *Held,* that

(1) The plaintiff was not a person having "actual notice" of the mortgage of the defendant within the meaning of those words in the pertinent section of the ship mortgage act, it having had no knowledge or notice at the time of its purchase from its vendor, and that being the decisive moment;

(2) The fact that the authorized agent of the defendant thought he was stating a gratuitous falsehood in misinforming the plaintiff's treasurer with respect to the mortgage, rather than one intended to be acted on, did not affect the title or right of the plaintiff;

(3) There was strong ground for holding that the defendant was estopped from asserting its unrecorded mortgage against the plaintiff;

(4) Knowledge of the mortgage on the part of the vendor, who had become an officer and director of the plaintiff, did not constitute notice to the plaintiff and could not be imputed to it, the officer in this matter conducting independent transactions of his own, his interests being hostile to those of the plaintiff, and he being an antagonistic party in the sale of the vessel to the plaintiff;

(5) The sale to the plaintiff was valid and was superior to the unrecorded mortgage to the defendant because the bill of sale to the plaintiff was duly recorded in accordance with the governing Federal statutes and because the plaintiff had no actual notice of the defendant's unrecorded mortgage until after its record title to the vessel was perfected and unimpeachable.

If incorporators agree before incorporation as to contribution of capital stock to the corporation and after the incorporation the corporation's officers vote to accept a proposition of one of the incorporators to transfer a vessel to it in payment for a quarter interest in the corporation, and the formal transfer of the vessel is made, the transferor becomes a stockholder even without an issue of stock to him and the corporation becomes a purchaser for value of the vessel.

The issuance of a certificate of stock is not essential to establish the relation of stockholder in a corporation.

BILL IN EQUITY, filed in the Superior Court on November 1, 1926, to enjoin the defendant from prosecuting an action of replevin of the steamship "Southland" and from proceeding with the foreclosure of an alleged mortgage thereon.

In the Superior Court, the suit was heard by *Lummus,* J. Material facts are stated in the opinion. A final decree was entered, in substance declaring that the defendant held no mortgage upon the vessel which was valid against the plaintiff and that as against the defendant the plaintiff had a clear title to the vessel free from all encumbrances. The defendant appealed.

The ship mortgage act of June 5, 1920, c. 250, § 30, subsection C (a); 41 U. S. Sts. at Large, 1000, as amended by Act of February 16, 1925, c. 235, § 2, 43 U. S. Sts. at Large, 948, reads as follows:

"No bill of sale, conveyance, mortgage, assignment of mortgage, or hypothecation (except bottomry), which includes a vessel of the United States or any portion thereof shall be valid in respect to such vessel against any person other than the grantor or mortgagor, his heirs or devisees, and any person having actual notice thereof, until such bill of sale, conveyance, mortgage, assignment of mortgage, or hypothecation is recorded in the office of the collector of customs at the home port of such vessel. Any bill of sale or conveyance of the whole or any part of a vessel shall be recorded at the home port of such vessel as shown in her new document."

The case was submitted on briefs.

*H. LeB. Sampson,* for the defendant.

*A. W. Blakemore,* for the plaintiff.

RUGG, C.J. This suit comes before us on appeal from final decree entered on findings of fact made by the trial judge. These facts must be accepted as final, since the evidence is not reported.

The underlying question is whether the title of the plaintiff to a vessel enrolled and licensed and thus documented under the laws of the United States (ship mortgage act, June 5, 1920, c. 250, § 30, subsection B, 41 U. S. Sts. at Large, 1000) is subject to either of two unrecorded mortgages, each running to the defendant, for convenience called respectively the mortgage of November 17, 1925, and the mortgage of February 21, 1926. The defendant in argument relies wholly upon the earlier mortgage. The issue thus is simplified and no further reference need be made to the later mortgage.

The plaintiff was organized as a corporation under the laws of Maine, with a capital stock of $100,000, pursuant to previous arrangement between one Hamlin and three others, all of whom were its directors and officers. Its general purpose was to own and operate steamships. Hamlin agreed to convey to the plaintiff the vessel here in question.

Being pressed by the plaintiff for the performance of his agreement, Hamlin executed, acknowledged and delivered to the plaintiff in Connecticut on January 16, 1926, a bill of sale of the vessel under seal with full covenants of warranty and no mention of encumbrances. Being further pressed by the plaintiff to take the necessary steps to record the bill of sale, Hamlin on February 1, 1926, exhibited to the plaintiff a copy of a bill of sale of the vessel from its real and record owner to the defendant dated November 13, 1925, reciting that it was subject to a mortgage for $3,000 to one Levinson, and a copy of another bill of sale of the vessel from the defendant to Hamlin dated November 17, 1925, reciting that it was subject to the Levinson mortgage and also to a second mortgage of the same date for $3,000 to the defendant "intended to be recorded simultaneously herewith." Neither of these bills of sale nor the second mortgage had been recorded. This was the first actual notice that the plaintiff or any of its stockholders or officers other than Hamlin had of the existence of any encumbrance upon the vessel. Up to this time the plaintiff, its officers and its stockholders other than Hamlin believed that Hamlin was the sole owner of the vessel free from all encumbrances, and that his conveyance to the plaintiff transferred clear title to the plaintiff, and they had no actual or constructive notice to the contrary. The treasurer of the plaintiff then went to New York, which was at that time the home port of the vessel, where instruments relative to the vessel properly would be recorded, found on examination of the records that the vessel was subject to the mortgage to Levinson, paid to Levinson the amount of his mortgage on February 3, 1926, and took a discharge of that mortgage running to the plaintiff. The treasurer of the plaintiff, with Hamlin, also on that same day saw one Gilbert, the vice-president and general manager of the defendant, who in all he did acted within the scope of his employment for and authority from the defendant. Gilbert said to the treasurer of the plaintiff that the defendant held no mortgage upon the vessel, and that the recital to that effect in its bill of sale to Hamlin was a mistake, as the debt had been paid before any mortgage was drawn.

Gilbert knowingly told this falsehood at the request of Hamlin. Neither Gilbert nor the defendant knew that the plaintiff had taken a bill of sale of the vessel or intended to do so. The truth was that the defendant, having bought the vessel on November 13, 1925, subject to the Levinson mortgage, sold it on November 17, 1925, to Hamlin, also subject to the Levinson mortgage, taking the price partly in cash and partly by an unrecorded second mortgage for $3,000 from Hamlin to it of the same date. The defendant delivered these two bills of sale of the vessel, one running to itself and the other from itself to Hamlin, to the latter, both unrecorded, and no effort was made at that time to record the second mortgage dated November 17, 1925. On February 16, 1926, the treasurer of the plaintiff and Hamlin went to the office of the collector of customs at Portland, Maine, asked to have the home port of the vessel changed to Portland, Maine, and offered for record the three bills of sale, (1) the one to the defendant, (2) the one from the defendant to Hamlin, and (3) the one from Hamlin to the plaintiff. Before the expiration of time taken for examining the documents by the collector, he received by mail from New York for record the second mortgage on the vessel given by Hamlin to the defendant on November 17, 1925. He told this fact to the treasurer of the plaintiff and Hamlin and refused to receive any of the documents for record because New York still remained the home port of the vessel. Hamlin told the treasurer of the plaintiff that the mortgage to the defendant had been paid and undertook to get it cancelled. He induced Gilbert to instruct the collector of customs at Portland to turn over to him the mortgage instead of recording it. Having thus secured possession of this mortgage, he delivered it to the plaintiff. The plaintiff, believing this mortgage to have been extinguished, caused the three bills of sale and the discharge of the Levinson mortgage to be recorded on February 24, 1926, in the office of the collector of customs at Portland, which in the meantime had been made officially the home port of the vessel. The result was that of record title to the vessel stood unencumbered in the name of the plaintiff, and on February 25,

1926, the plaintiff received from said collector a consolidated certificate of enrollment and license for the vessel in its name. The vessel was on November 14, 1925, and thence continuously until some time in March, 1926, in a harbor in the State of Connecticut. In the meantime, on some date not disclosed on the record but inferentially after January 16, 1926, and before February 25, 1926, possibly before February 1, the plaintiff took actual possession of the vessel and made costly repairs on her. There was advanced for this purpose by the incorporators of the plaintiff other than Hamlin $8,300 prior to December 10, 1925, and thereafter $15,100, the last advancement of $4,500 having been made on February 6, 1926. The plaintiff brought the vessel to Boston in March, 1926, where she has since remained.

Summarily stated, the facts are that Hamlin acquired title to the vessel on November 17, 1925, subject to a first preferred mortgage of record, and on the same date gave a second mortgage to the defendant (the validity of which here is in issue), which never was recorded. Hamlin sold the vessel to the plaintiff on January 16, 1926, by bill of sale with full covenants of warranty and no mention of encumbrances. The plaintiff believed at this time that Hamlin was the sole owner of the vessel and that clear title was transferred to it by Hamlin. Notice of the existence of the defendant's mortgage first came to the attention of the plaintiff or any of its officers other than Hamlin on February 1, 1926, but the defendant declared to the plaintiff on the next day but one and thereafter that its mortgage was paid, the mortgage never was recorded and in fact was later delivered to the plaintiff by Hamlin to whom it was entrusted by the defendant. Complete title to the vessel free from encumbrances was shown on the public records to be in the plaintiff on February 24, 1926.

A ship is treated as personal property by the courts of common law. *Johnson* v. *Chicago & Pacific Elevator Co.* 119 U. S. 388, 398. *Bartlett* v. *Williams*, 1 Pick. 288, 295. *Portland Bank* v. *Stacey*, 4 Mass. 661, 663. *Atlantic Maritime Co.* v. *Gloucester*, 228 Mass. 519, 526, and cases there cited. Except so far as modified by controlling statutes,

the transfer of title and the force and validity of mortgages are to be tested by the common law touching sales of personal property.

It is provided by the ship mortgage act, June 5, 1920, c. 250, § 30, subsection C (a), 41 U. S. Sts. at Large, 1000, as amended by Act of February 16, 1925, c. 235, § 2, 43 U. S. Sts. at Large, 948, in force at the time of these transactions: — "No bill of sale, conveyance, mortgage, assignment of mortgage or hypothecation (except bottomry), which includes a vessel of the United States . . . shall be valid in respect to such vessel against any person other than the grantor or mortgagor, his heirs or devisees, and any person having actual notice thereof, until such bill of sale, conveyance, mortgage, assignment of mortgage, or hypothecation is recorded in the office of the collector of customs at the home port of such vessel . . . ." The ship in question was an enrolled and licensed ship under the laws of the United States and hence subject to these provisions of statute. See *Commonwealth* v. *Kemp,* 254 Mass. 190, 196, and cases cited.

As between all the parties to these transactions Hamlin was the owner of the vessel on January 16, 1926, when he sold her to the plaintiff. It was confessedly subject to the Levinson preferred mortgage, which was duly recorded as required by the statutes of the United States. As between Hamlin and the defendant, his vendor, it was subject to a further mortgage to the defendant, but that mortgage was not recorded and hence did not bind anybody except them and parties having actual notice of it. But of this mortgage the plaintiff and its officers other than Hamlin were ignorant at the time of the sale by Hamlin to the plaintiff. As between Hamlin and the plaintiff at common law title to the ship passed by the contract of sale. *Bondy* v. *Hardina,* 216 Mass. 44, 47. "As between the parties, the sale and delivery of a vessel passes title at common law." *Gaston, Williams & Wigmore of Canada, Ltd.* v. *Warner,* 272 Fed. Rep. 56, 60.

There is no specific finding where this sale took place. If it be assumed that it took place in Connecticut, where the

bill of sale was delivered and where the vessel was at the time, then in the absence of anything in the record or called to our attention in argument or otherwise to show the contrary, we shall follow the usual presumption that the common law of that State is the same as that of this Commonwealth. See St. 1926, c. 168. *Parrot* v. *Mexican Central Railway*, 207 Mass. 184, 191–193. *Eastman Marble Co.* v. *Vermont Marble Co.* 236 Mass. 138, 150. If the law of the residence of the vendor governs, the result is the same, he having been an inhabitant of Massachusetts.

The plaintiff was not a person having "actual notice" of the mortgage of the defendant within the meaning of these words in the pertinent section of the ship mortgage act already quoted. It had no knowledge or notice at the time of its purchase from Hamlin. That is the decisive moment. The terms of G. L. c. 183, § 4, as to actual notice of mortgages of real estate not recorded, are substantially identical in words with those of the governing Federal statute as to mortgages of ships, heretofore quoted. It has been held under our statute that "it is actual notice before the purchaser acquires title, which deprives him" of the protection of the statute and not notice acquired after the conveyance. *Wenz* v. *Pastene*, 209 Mass. 359, 363. That principle is applicable to the case at bar. Notice of the possible existence of such mortgage first came to the plaintiff about two weeks later, and its treasurer as soon as possible made inquiry of the defendant. Its duly authorized agent assured him that there was no such mortgage and that the reference to it in the bill of sale from it to Hamlin was a mistake. Whether there was in existence a mortgage to the defendant then became an important subject to the plaintiff. Hamlin by his bill of sale and otherwise represented that there was no such mortgage. The treasurer of the plaintiff went at once with Hamlin to see the defendant. He made inquiries of its duly authorized agent. The trial judge has found expressly that Gilbert was the authorized agent of the defendant acting within the scope of his authority in what he said at this interview. This finding cannot be escaped. *Haskell* v. *Starbird*, 152 Mass. 117, 121.

*Kershishian* v. *Johnson,* 210 Mass. 135, 138. *Dzuris* v. *Pierce,* 216 Mass. 132, 134. *Howe* v. *Johnson,* 236 Mass. 379, 386. Gilbert asserted positively and with minuteness of detail that there was no such mortgage, that it never had existence, and that any reference to it in the bill of sale which the defendant had given to Hamlin was a pure mistake. The treasurer of the plaintiff was not required to state to Gilbert the purpose of his inquiry. The question whether there was such a mortgage was not susceptible of proof by resort to public records or to any other source of information except the holder, who was also the mortgagee, and the maker of the mortgage. Both asserted that there was not and never had been such a mortgage. The fact that the authorized agent of the defendant thought he was making a gratuitous falsehood rather than one intended to be acted on, does not affect the title of the plaintiff. Courts are not inclined to encourage deceit. *Mabardy* v. *McHugh,* 202 Mass. 148, 150. One cannot be charged with actual notice of a fact, the existence of which is flatly denied by the only person interested in maintaining the existence of that fact. This branch of the case rests upon the want of actual notice on the part of the plaintiff of the existence of the unrecorded mortgage of the defendant.

There is strong ground for holding, also, that the defendant is estopped from asserting its unrecorded mortgage against the plaintiff. It seems an irresistible inference from the facts found that, by reason of the representations of Gilbert as to the nonexistence of the mortgage, the plaintiff was induced to make advancements of $4,500 for the repairs of the vessel four days after the statements of Gilbert were made. *Boston & Albany Railroad* v. *Reardon,* 226 Mass. 286, 291.

Knowledge of the mortgage to the defendant on the part of Hamlin, although an officer and director of the plaintiff, does not constitute notice to the plaintiff and cannot be imputed to it, because Hamlin was in this matter conducting independent transactions of his own, his interests were hostile to those of the plaintiff, he was the antagonistic party in the sale of the vessel to it, and his conduct was at least

disingenuous toward the plaintiff. On this point the case falls within the principle established by numerous authorities collected in *Tremont Trust Co.* v. *Noyes*, 246 Mass. 197, 207. *Grow* v. *Prudential Trust Co.* 249 Mass. 325.

The finding of the trial judge was that this is a case "where a grantor has given two inconsistent conveyances to different persons, each of whom took without actual notice of the conveyance to the other." This finding is not inconsistent with other facts found, but is compatible with them. It must stand. In these circumstances the one who subsequently first records his conveyance gains priority and establishes his title, no matter which was earlier in point of time of execution. *Keepers* v. *Fleitmann*, 213 Mass. 210, 211. *Berry* v. *Levitan*, 181 Mass. 73. *Duffy* v. *Charak*, 236 U. S. 97.

It follows that the sale to the plaintiff was valid and was superior to the unrecorded mortgage to the defendant because the bill of sale to the plaintiff was duly recorded in accordance with the governing Federal statutes and because the plaintiff had no actual notice of the defendant's unrecorded mortgage until after its record title to the vessel was perfected and unimpeachable. See *Morse Drydock & Repair Co.* v. *Steamship Northern Star*, 271 U. S. 552.

We do not pause to inquire whether under the controlling statute the plaintiff must be a purchaser for value, or whether it can prevail without proof of that fact, because we are of opinion that the facts establish that the plaintiff was a purchaser of the vessel for value as well as without notice of the defendant's unrecorded mortgage. Hamlin agreed to transfer the vessel to the plaintiff as his contribution to the capital of the plaintiff, while the other three incorporators agreed "to invest in the corporation $15,000 if as and when required" to put the vessel in operation. Seemingly they advanced in all $23,400 for the uses of the plaintiff. These payments of cash or advances to the plaintiff were treated as though paid into its treasury. It was understood that all four incorporators should have equal interests in the corporation. This arrangement, having been made between the incorporators before the organization of the plaintiff as

a corporation, did not bind it. *Abbott* v. *Hapgood,* 150 Mass. 248, 252, and cases cited. But after the corporation was organized its officers voted to accept the proposition of Hamlin to transfer the vessel to the corporation in payment for a quarter interest in the corporation. The formal transfer to the plaintiff of title to the vessel seemingly was pursuant to this vote and the performance by Hamlin of his proposition. He did not transfer the vessel to the plaintiff free of encumbrance, but the plaintiff paid the Levinson mortgage on her. The acceptance of the bill of sale and the taking possession of the vessel by the plaintiff appear to have been an affirmation of its vote and of the understanding whereby she was to be transferred to it by Hamlin. Some readjustments between the plaintiff and Hamlin might be required.

On these facts Hamlin became a stockholder in the plaintiff in return for the vessel transferred to it in accordance with his agreement. The issuance of a certificate of stock is not essential to establish the relation of stockholder in a corporation. The property interest of a real stockholder who has made payment to the corporation for stock exists and may be enforced even though no certificate for shares of stock is issued. *Old Dominion Copper Mining & Smelting Co.* v. *Bigelow,* 203 Mass. 159, 198, and cases cited. *Hood Rubber Co.* v. *Commonwealth,* 238 Mass. 369, 372, 373. *McGinty* v. *Athol Reservoir Co.* 155 Mass. 183. The obligation of the plaintiff was to issue shares of stock to Hamlin as the purchase price of the vessel, or at least to recognize him as a stockholder. In any event, he was a stockholder without certificate to the extent of his contribution to the capital stock of the plaintiff.

It might have been open to the defendant to show that the bill of sale from Hamlin to the plaintiff, although under seal and thus importing a valuable consideration, was in truth without consideration. *Guaranty Security Corp.* v. *Eastern Steamship Co.* 241 Mass. 120, 123. *Johnson* v. *Von Scholley,* 218 Mass. 454, 457. But there is no finding to this effect and no contention of that nature has been made in argument. The relative rights and obligations of the plain-

tiff and the estate of Hamlin, who died prior to the institution of this suit, with respect to the sale of the vessel by him to the plaintiff, are not put in issue in the case at bar and we do not pretend to pass upon them. We merely point out that there is enough on this record to show that the plaintiff was a purchaser of the vessel for value.

Every argument presented by the defendant has been considered, but no further discussion is necessary.

*Decree affirmed with costs.*