BARRY WOOD vs. ROY LAPIDUS, INC. & another.[1]

Norfolk.   October 9, 1980. — December 8, 1980.

Present: BROWN, GREANEY, & KASS, JJ.

*Contract,* Interpretation, Sale of stock.  *Pleading, Civil,* Admissions.
*Evidence,* Judicial admission.  *Waiver.*

In a civil action, evidence that the defendant acknowledged by letter re-
ceipt of $2,500 from the plaintiff as partial payment for the purchase
of a 5% interest in the defendant's corporation and stated that an ad-
ditional $2,500 was to be paid within six months, whereupon the
plaintiff was to have "full ownership, free on any encumbrances" of
5% of the stock of the corporation, and that the complete purchase
price was "really the sum of $12,000 and you are to give me out of any
and all income that you receive from this business, the first $7,000 in
order to get to the total original purchase price of $12,000," warranted
a conclusion that the plaintiff's obligation to pay the additional $7,000
was independent of his right to ownership of the stock. [763-765]
There was nothing in the record of a civil action to support the judge's
finding that the plaintiff continued to work for the defendant's cor-
poration in exchange for the defendant's waiver of a $7,000 payment
owed to the defendant in return for the plaintiff's receiving a share of
the corporate stock. [766-767]

CIVIL ACTION commenced in the Superior Court on
August 3, 1976.

The case was heard by *Mason, J.*

*Robert P. Springer* for the defendants.

*Walter H. McLaughlin, Jr.,* for the plaintiff.

KASS, J.  Some six months of confinement to a hospital
bed following a skiing accident in the winter of 1967 in-
spired the defendant Roy Lapidus to invent a device which
would prevent decubitus ulcers (bed sores).  While still
abed, Lapidus developed his "Lapidus Airfloat System" and

---

[1] Roy Lapidus.

obtained the occasional collaboration of the plaintiff Barry Wood, who was a social and business friend. This case concerns Wood's share in the corporation, Roy Lapidus, Inc. (the corporation), which Lapidus had earlier organized and which came to manufacture and sell the Airfloat System.

From the trial judge's findings of fact we also learn that on November 30, 1967, Lapidus filed an application for a patent on the Airfloat System and that the United States Patent Office ultimately issued to him Patent No. 3,653,083 for his device. Wood was not involved in the actual invention of the Airfloat System and did not contribute to obtaining the patent.

During the development and production phase, however, Wood spent an average of ten hours per week on the construction and assembly of the Airfloat System. In due course Lapidus offered Wood a piece of the business. On May 27, 1968, Lapidus authored and delivered to Wood a letter (the full text of which is set out in the margin)[2] setting forth the terms on which Wood might acquire stock in the corporation. Whatever merits that letter had in the way of brevity were overshadowed by its demonstrable ambiguity. The letter acknowledged receipt of $2,500 toward acquisition of a five percent interest in "my medical aids equip-

---

[2] "This is to acknowledge receipt of Two thousand Five hundred Dollars ($2,500.00) by check, from you towards the purchase of 5% of my medical aids equipment business.

"I also acknowledge that Two Thousand Five Hundred ($2,500.00) more is coming toward your having full ownership, free of any encumbrances of 5% of the above business which is currently a division of Roy Lapidus, Inc. and it is understood that attorney Harold S. White is to hold 100 shares of U. S. Industries, Common Stock as security for your paying the $2,500.00 still due.

"Said money is to be paid by you in or within six (6) months from this date at which time I will instruct attorney Harold S. White to return the 100 shares of U. S. Industries Common Stock to you and that which time I will also instruct Harold S. White to issue to you 5% of the stock of the corporation that is to run the medical aides [sic] equipment business.

"It is also understood that the complete purchase price for the 5% interest is really the sum of $12,000.00 and you are to give to me out of any and all income that you receive from this business, the first $7,000.00 in order to get to the total original purchase price of $12,000.00."

ment business." An additional $2,500 was to be paid within six months, whereupon Wood was to have "full ownership, free of any encumbrances" and one Harold S. White, a lawyer (presumably acting for Lapidus), was to issue to Wood five percent of the stock "of the corporation that is to run the medical aides [sic] equipment business." The last paragraph of the letter, however, says that the "complete" price for the five percent interest is "really the sum of $12,000" to be paid "out of any and all income" that Wood received from "this business."

Wood paid the second instalment of $2,500 but never received a stock certificate. He never paid the remaining $7,000. In 1976, the corporation was sold for a figure, net after taxes, of $900,000.[3] The trial judge found that Wood was vested with a five percent interest in the corporation, that Lapidus and the corporation had waived payment of the $7,000 which was the balance of the purchase price, and that Wood was entitled to $45,000.[4]

On their appeal, the defendants urge two points: (1) that Wood's interest in the corporation was conditioned on his paying the full purchase price; and (2) that the judge erred in finding that Lapidus' waiver of the payment of the additional $7,000 was supported by consideration.

1. *The Status of the $7,000 Obligation.*

Whether the letter of May 27, 1968, outlining the terms on which Wood might buy into the corporation expressed the obligation to pay an additional $7,000 as a condition precedent,[5]

---

[3] The corporation did not own the Airfloat System patent; Lapidus had retained the patent and licensed it to the corporation, rather than assigning it. The judge found Wood was not entitled to any income from the sale of the Airfloat System patent.

[4] The trial judge found that the corporation did own a later patent, referred to as the Venapressor patent, and provided in the judgment that Wood was to recover five percent of any income attributable to the Venapressor patent.

[5] A condition precedent is an act which must occur before performance by the other party is due. *Malden Knitting Mills* v. *United States Rubber Co.*, 301 Mass. 229, 233 (1938). Restatement of Contracts § 250 (1932).

a condition subsequent,[6] or an independent obligation requires ascertaining the intent of the parties as expressed in the instrument. *Gardiner* v. *Corson*, 15 Mass. 500, 503 (1819). To that end, a court considers the words used, see *MacDonald* v. *Gough*, 326 Mass. 93, 96 (1950); the document taken as a whole, *King Features Syndicate, Inc.* v. *Cape Cod Bdcst. Co.*, 317 Mass. 652, 654 (1945); *Johnson* v. *Worcester Business Dev. Corp.*, 1 Mass. App. Ct. 527, 529 (1973); and surrounding facts, *Robert Indus., Inc.* v. *Spence*, 362 Mass. 751, 755 (1973). See *Fay, Spofford & Thorndike, Inc.* v. *Massachusetts Port Authy.*, 7 Mass. App. Ct. 336, 341-342 (1979). We agree with the trial judge's conclusion that the language in the second paragraph of the May 27, 1968, letter, which speaks of Wood having "full ownership, free of any encumbrances" upon payment of the second instalment of $2,500, negates the notion that Wood's ownership of the stock was conditional. The obligation to pay the additional $7,000 was an independent one. There was also evidence to which the judge could give weight that Lapidus had frequently referred to Wood as a stockholder. *Pittsfield & No. Adams R.R.* v. *Boston & Albany R.R.*, 260 Mass. 390, 398 (1927). Parol evidence, of course, was admissible in aid of construing an ambiguous written instrument. *Id.* *LaCouture* v. *Renaud*, 325 Mass. 33, 36-37 (1949). If there were any residual doubts on this score, they would be resolved against the defendants by application of the principle that a written instrument is construed strongly against the party who drew it if ambiguous or uncertain language is used. *Bowser* v. *Chalifour*, 334 Mass. 348, 352 (1956). It was of no consequence that the corporation never issued and delivered to Wood any stock certificates. *Atlantic Transp. Co.* v. *Alexander Shipping Co.*, 261 Mass. 1, 11 (1927). *Samia* v. *Central Oil Co.*, 339 Mass. 101, 110 (1959).

---

[6] A condition subsequent is a condition which relieves a party of the obligation of further performance. 5 Williston, Contracts § 667, at 145 (3d ed. 1961).

The defendants urge, however, that construction of the May 27, 1968, letter was not open to the court because the plaintiff in his complaint had made a judicial admission that he would receive his five percent interest in the business upon payment of the total $12,000. A judicial admission is a proposition of fact in the form of acts or declarations during the course of judicial proceedings which conclusively determine an issue. Leach & Liacos, Massachusetts Evidence 14-15 (4th ed. 1967). 9 Wigmore, Evidence § 2588, at 586 (1940). Allegations in pleadings may constitute judicial admissions, G. L. c. 231, § 87, but only if they are allegations of fact. *Wasserman* v. *Tonelli,* 343 Mass. 253, 257 (1961). Leach & Liacos, *supra* at 21.

It does not appear that the significance which the defendants seek to attach to the seventh paragraph of the complaint[7] was called to the attention of the trial judge. We, therefore, need not consider the question, *Gerber* v. *TyData, Inc.,* 5 Mass. App. Ct. 898, 898-899 (1977), although we observe in passing that, fairly construed, the statements in the complaint as to the effect of the written agreement between the parties were conclusions of law rather than allegations of fact. See *Wasserman* v. *Tonelli,* 343 Mass. at 257; *Steranko* v. *Inforex, Inc.,* 8 Mass. App. Ct. 523, 527-528 (1979) (court fairly construes pleadings). See also Mass.R.Civ.P. 8(f), 365 Mass. 751 (1974) (pleadings to be construed to do substantial justice).

---

[7]Paragraph seven of the complaint reads as follows: "At this time, the Plaintiff and the Defendants entered into and executed a written agreement by the terms of which the Plaintiff was to pay to the Defendants the sum of Five thousand ($5,000.00) Dollars plus an additional Seven thousand ($7,000.00) Dollars out of the Plaintiff's share of the profits of Roy Lapidus, Inc., and upon payment of said total amount the Plaintiff would receive from the Defendants a five (5%) percent interest in the Common Stock of Defendant, Roy Lapidus, Inc." In their brief the defendants say this paragraph in the complaint was brought to the attention of the trial judge. There is little support in the record for this contention and none for the implication that the issue of a judicial admission was raised with the trial judge.

2. *Waiver of the $7,000 Payment.*

There was evidence that Lapidus had raised with Wood the matter of the balance of the $7,000 due for his interest in the corporation and that Lapidus had expressly waived payment of the additional amount. To the extent that the waiver by Lapidus was gratuitous, it would not bind him or the corporation. Wood's services to the defendants before the waiver would not support a binding promise. *Conant v. Evans*, 202 Mass. 34, 38 (1909). *Field v. Hamm*, 254 Mass. 268, 270 (1926). The judge found consideration for the waiver by Lapidus of the $7,000, in Wood's continuing to work for the corporation notwithstanding that he was not contractually bound so to do. See *Balkin v. Frank M. Katz, Inc.*, 373 Mass. 419, 421 (1977). The record, however, is devoid of anything which supports a finding that there was an understanding that Wood would continue in his employment in exchange for waiver of the $7,000 payment. Indeed, so much of the record as touches on any understanding negates the conclusion that one existed. The subject came up during cross-examination of Wood, the pertinent portion of which was as follows:

"[Defendant's Counsel:]     Q. And at the time, did Roy ask anything of you so that he would forgive the $7,000.00?

Wood:     A. No.

Q. He didn't ask you to promise that you continue working for any particular period of time in the future at any particular wage or any other such agreement?

A. No.

Q. And prior to the $7,000.00 he hadn't said anything of that sort to you in order for him to forgive the $7,000.00, is that correct?

A. Correct."

Nor was there any showing, as there must have been under our case law, "that the continued employment [was] in reliance on the promised benefit." *Balkin* v. *Frank M. Katz, Inc.*, 373 Mass. at 422. The finding, therefore, that Wood continued to work for the corporation in consideration of the waiver and forgiveness of the $7,000 payment was clearly erroneous. Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974). Accordingly, Wood's recovery must be reduced by $7,000, the amount due to the corporation for the balance of Wood's stock.

The judgment is to be modified by substituting the figure $38,000 for the figure $45,000 in the first and second paragraphs thereof and, as so modified, is affirmed.

*So ordered.*