47 Mass. App. Ct. 717 (1999)                    717

City of Haverhill *v.* George Brox, Inc.; Gordon Construction Corporation.

CITY OF HAVERHILL *vs.* GEORGE BROX, INC.; GORDON
CONSTRUCTION CORPORATION, third-party defendant.

No. 97-P-1896.

Essex. April 14, 1999. - September 15, 1999.

Present: GREENBERG, LENK, & SPINA, JJ.

*Public Works. Contract,* Public works, Subcontract, Condition, Construction
of contract, Indemnity, Choice of law clause. *Indemnity.*

This court concluded that a public works subcontract was intended by the par-
ties to be formed upon its execution, with an express condition that the
subcontractor be approved by the State Department of Public Works;
where the subcontract was signed on March 8, 1985, before the effective
date of G. L. c. 149, § 29C, the indemnification clause of the subcontract
was enforceable. [720-724]
A Superior Court judge correctly concluded that, in the circumstances of a
public works subcontract executed with a Maine contractor, the Com-
monwealth's interest was paramount in the application of its own law to a
dispute arising under the subcontract. [724-725]

CIVIL ACTION commenced in the Superior Court Department on
August 9, 1991.

A third-party complaint, filed on April 26, 1993, was heard
by *Judith Fabricant,* J., on motions for summary judgment, and
entry of separate and final judgment was ordered by *Robert H.
Bohn, Jr.,* J.

*Kara Larzelere* for Gordon Construction Corporation.

*John A. Lacaire* for George Brox, Inc.

SPINA, J. George Brox, Inc. (Brox), filed a third-party
complaint against Gordon Construction Corp. (Gordon) seeking
indemnification under the terms of a public works subcontract
for payment made on a negligence claim. A Superior Court
judge allowed Brox's motion for summary judgment and denied
Gordon's cross motion for summary judgment. On appeal, Gor-
don challenges the judge's rulings (1) that the subcontract
became effective before the effective date of G. L. c. 149,

§ 29C, and that consequently the statute had no impact on the indemnification clause of the subcontract, and (2) that Maine law, which prohibits such indemnification clauses, does not apply. We affirm, but for reasons different than those relied on by the motion judge.

The material facts are not disputed.[1] Brox was awarded a general contract by the Commonwealth's Department of Public Works (DPW) on January 14, 1985, to resurface Route 125 in the city of Haverhill (city). Gordon, a Maine corporation authorized to do business in Massachusetts, submitted quotes to Brox for subcontracting work, and Brox responded favorably on March 4, 1985, by mailing to Gordon a subcontract and various other forms, including a subcontractor's certification that Gordon would comply with certain antidiscrimination and affirmative action requirements. Gordon executed the subcontract in Maine on March 8, 1985, and mailed it back to Brox with the other completed forms. Section 19 of the subcontract stated "[t]his subcontract shall become effective upon approval of the subcontractor by" the DPW. On March 13, 1985, Brox sent a letter to the DPW requesting approval of Gordon as Brox's subcontractor. On April 7, 1985, G. L. c. 149, § 29C, set forth in the margin,[2] became effective. On June 5, 1985, the DPW approved Gordon as a subcontractor to Brox.

Brox began work on the Haverhill project on March 20, 1985. Gordon began its work under the subcontract on November 19, 1985. On November 20, a reserve police officer from the Haverhill police department was working a paid detail at Brox's request.[3] It was the officer's job to provide traffic control in the construction area. The police officer was following two Gordon employees down the highway with his automobile when he struck and injured them. The two Gordon employees, who were residents of Maine, received workers' compensation benefits from Gordon's workers' compensation insurer pursuant to the laws of Maine.

---

[1]The case was submitted on an "agreed statement of facts."

[2]"Any provision for or in connection with a contract for construction . . . including without limitation, excavation, backfilling or grading, . . . on any real property, including without limitation any road, bridge, tunnel, sewer, water or other utility line, which requires a subcontractor to indemnify any party for injury to persons or damage to property not caused by the subcontractor or its employees, agents or subcontractors, shall be void." G. L. c. 149, § 29C, as appearing in St. 1985, c. 228, § 3.

[3]See G. L. c. 149, § 34B.

The two employees filed personal injury actions against the police officer, the city of Haverhill, and Brox. The city settled the claims against it and then brought this action against Brox seeking indemnification under the terms of the general contract between the DPW and Brox. Brox, with contribution from Gordon, settled with the city. Brox then looked to Gordon for indemnification of the amount it paid, based upon section 7 of the subcontract, which provided that Gordon, as subcontractor, would "indemnify and save harmless [Brox, as general contractor] from any and all claims . . . arising out of the performance of work hereunder."

1. Central to this case is the meaning of the phrase "effective upon approval" appearing in section 19 of the subcontract. Gordon argues that section 19 created a condition precedent to the formation of the subcontract such that the subcontract did not come into existence until June 5, 1985, when the DPW approved Gordon as a subcontractor on the project. If Gordon is correct, then G. L. c. 149, § 29C, which became effective on April 7, 1985, would operate to nullify the indemnification clause of the subcontract. See *Harnois* v. *Quannapowitt Dev., Inc.*, 35 Mass. App. Ct. 286 (1993). Brox contends that the subcontract came into existence on March 8, 1985, when it was executed by Gordon, and that section 19 created a condition precedent to the parties' rights to immediate performance under the subcontract. The motion judge agreed that the subcontract was formed on March 8, 1985, but found that section 19 created a condition subsequent which, if unmet, would void the subcontract. In the view of the judge and Brox, the subcontract came into existence before § 29C became effective and thus escaped its reach. See *Jones* v. *Vappi & Co.*, 28 Mass. App. Ct. 77, 81 (1989).

Contract conditions precedent generally are of two kinds. The first involves issues of offer and acceptance which precede and determine the formation of a contract. See *Massachusetts Biographical Soc.* v. *Howard*, 234 Mass. 483 (1920); *Tilo Roofing Co.* v. *Pellerin*, 331 Mass. 743 (1954). The second arises from the terms of a valid contract and defines an event which must occur before a right or obligation matures under the contract. See *Sechrest* v. *Safiol*, 383 Mass. 568, 571 (1981); *Massachusetts Mun. Wholesale Elec. Co.* v. *Danvers*, 411 Mass. 39, 45 (1991); *Wood* v. *Roy Lapidus, Inc.*, 10 Mass. App. Ct. 761, 763 n.5 (1980). See also Corbin, Contracts § 628 (1960 &

Supp. 1999); 5 Williston, Contracts § 666A (3d ed. 1961 & Supp. 1999); Restatement (Second) of Contracts § 224 (1981). In contrast "[a] condition subsequent is a condition which relieves a party of the obligation of further performance" under a valid contract. *Wood* v. *Roy Lapidus, Inc.*, 10 Mass. App. Ct. at 764 n.6.

Where the language of a contract is not ambiguous, the words will be given their plain meaning, *Freelander* v. *G. & K. Realty Corp.*, 357 Mass. 512, 515-516 (1970), or their well-established meaning, *Erhard* v. *F.W. Woolworth Co.*, 374 Mass. 352, 355 (1978). The phrase "effective upon approval" in section 19 is not without ambiguity. Gordon equates it with existence; Brox, with operation. Where the terms of an instrument are ambiguous, a court must determine meaning from the intent of the parties upon consideration of the words in question, the entire instrument, and surrounding circumstances. See *Massachusetts Mun. Wholesale Elec. Co.* v. *Danvers*, 411 Mass. at 45-46. "Justice, common sense and the probable intention of the parties are guides to construction of a written instrument." *Stop & Shop, Inc.* v. *Ganem*, 347 Mass. 697, 701 (1964). "So far as reasonably practicable [a contract] should be given a construction which will make it a rational business instrument and will effectuate what appears to have been the intention of the parties." *Bray* v. *Hickman*, 263 Mass. 409, 412 (1928).

The subcontract at issue has all the components of a valid contract: offer, acceptance, consideration, and terms setting forth the rights and obligations of the parties. It was executed under seal. The parties are content that the subcontract was a complete expression of their agreement and that no other terms were left to negotiate. The condition of the DPW approval was created by express provision of the subcontract, and, upon such condition being met, the rights and obligations of the parties as defined by the subcontract would spring forth without need for any further action by the parties. This could only occur if the subcontract was in existence at the time the condition was met. Contrast *Massachusetts Biographical Soc.* v. *Howard*, 234 Mass. 483, where a signed document, on its face a valid contract, was found not intended by the parties to become a contract unless and until the defendant notified the plaintiff, pursuant to a contemporaneous oral agreement, that he accepted the writing as a contract. As such, the document was merely an offer by the plaintiff, acceptance of which had never been communicated,

and no contract was formed. *Id.* at 488. Similarly, in *Tilo Roofing Co.* v. *Pellerin*, 331 Mass. 743, parol evidence was properly admitted to show that a writing purporting to be a home improvement contract was never intended by the parties to be a contract at the time it was signed, and would not become a contract unless and until the homeowners notified the contractor that they were willing to accept the writing. *Id.* at 746. Although there the court reasoned that a contract never had been formed due to the absence of acceptance by the homeowners, the facts suggest that the homeowners did accept the contract, but that the parties had agreed such acceptance could be revoked, and it was. In both *Massachusetts Biographical Soc., supra,* and *Tilo Roofing Co., supra,* a condition precedent applied to the formation of the contract. Here, Gordon accepted Brox's terms, and a contract was formed without provision for either party, respectively, to revoke either offer or acceptance.

Significantly, Gordon concedes that beginning March 8, 1985, the executed subcontract eliminated the risk to Brox that Gordon would refuse to sign[4] the subcontract once the DPW approved Gordon as subcontractor; and the subcontract eliminated the risk to Gordon that Brox would employ a different subcontractor regardless of whether Gordon was approved. Gordon does not explain how these protections could arise from a writing that was not binding upon the parties. Rather, we see such protections arising from an irrevocable relationship under an existing contract. Gordon alternatively contends that these protections arose by reason of its detrimental reliance on Brox's offer, under principles of promissory estoppel, apart from the existence of a contract. See *Loranger Constr. Corp.* v. *E.F. Hauserman Co.*, 376 Mass 757, 760 (1978). This argument, too, must fail, because such estoppel or reliance presumes the existence of a contract. *Id.* at 761 (emphasizing "reliance" rather

---

[4] Gordon invokes the provisions of 301 Code Mass. Regs. § 50.17, Appendix 2 (1996), which declares void any subcontract executed before written approval is obtained from an authorized representative of the applicable State agency that the subcontractor's certification has been incorporated into the subcontract. Gordon's claim that this regulation evidences the parties' intent that the subcontract would have no existence until the DPW approval is undermined by the fact that the parties never reexecuted the subcontract after the DPW approval. Further, Gordon cites no authority for the proposition that an agency has authority to effectuate a forfeiture of contractual rights in the absence of statutory authority. Compare *Valley Stream Teachers Fed. Credit Union* v. *Commissioner of Banks*, 376 Mass. 845, 852-854 (1978).

than the phrase "promissory estoppel," which "tends to confusion rather than clarity").

Gordon relies on two decisions, *Howland* v. *Plymouth*, 319 Mass. 321 (1946), and *Eckstrom* v. *Eckstrom*, 327 Mass. 140 (1951), for the proposition that parties may agree to conditions precedent to the formation of a contract involving issues other than offer and acceptance. Those cases do not support the argument. In *Howland, supra*, a contract to assign leases was held not to take effect, because it was subject to an oral condition that the assignment be consented to by the lessor, and that consent had been withheld. The court concluded that the assignments had not taken effect because the condition precedent had not been met. The court implicitly acknowledged, however, that the underlying contract was valid because the offer making the landlord's consent a condition of the assignments had been accepted. 319 Mass. at 324. In *Eckstrom, supra*, an estranged husband and wife executed duplicate sealed originals of a writing providing for the separate support of the wife. The documents were delivered to the wife's lawyer and held in escrow, pursuant to the parties' oral agreement that the documents would not be effective or delivered to the parties until the wife obtained a divorce that was valid in New York. The wife filed for divorce, but the action was dismissed for want of prosecution. The documents were never delivered. The wife brought suit on the documents, but the trial judge, ostensibly recognizing the existence of a valid contract, concluded that the wife failed to comply with the terms of the parties' oral agreement. On appeal, the judgment was affirmed on the basis of lack of delivery of the writings. 327 Mass. at 142-143. *Eckstrom* is not applicable because here the subcontract was delivered.[5]

We conclude that the parties intended the subcontract to

---

[5]Decisions such as *Eckstrom, supra*, which, apart from issues of escrow, turn on conditional delivery, have been criticized as mistaking a condition precedent to the formation of a contract for a condition that arises, expressly or impliedly, from an existing contract. See Corbin, Contracts § 589; 5 Williston, Contracts § 666. The confusion, it is said, derives from the approval of admission under an exception to the parol evidence rule of testimony that a writing which appears on its face to be a complete expression of the transaction was never intended to be binding unless a condition was met under the terms of a contemporaneous oral agreement. That reasoning is seen as faulty, because the parties indeed would have been bound by the writing, without more, had the condition been met, so the writing necessarily evidenced a valid, existing contract. Rights and duties arise under the contract, the critics maintain, upon the occurrence of the event described in the condition. In the

become a valid contract when executed by Gordon on March 8, 1985, in order to secure their relationship at least until the DPW acted, and that the parties intended their obligations under the subcontract to be subject to the condition of the DPW approval. We further conclude that the subcontract was unaffected by the provisions of G. L. c. 149, § 29C.

Though it will not affect the outcome, there remains the question whether the condition was precedent or subsequent. These terms have been the source of considerable confusion, and this case illustrates the reason for their discontinued use by the American Law Institute. See Restatement (Second) of Contracts § 224, Reporter's Note at 164. The condition subsequent, like the condition precedent to the formation of a contract, is frequently mistaken for a condition precedent under an existing contract. See Restatement (Second) of Contracts § 230 (1981) (where it is now described as a discharge of obligation); Corbin, Contracts § 628. True conditions subsequent are considered rare. See 5 Williston, Contracts § 667; Calamari and Perillo, Contracts § 11-7 (3d ed. 1987).

The motion judge concluded that the subcontract created a condition subsequent because "the parties intended Section 19 to relieve [them] of their obligations in the event the DPW did not approve Gordon." See *Wood* v. *Roy Lapidus, Inc.*, 10 Mass. App. Ct. at 764 n.6. However, as no obligation could have arisen without the DPW approval, there could be no obligation to be discharged upon the DPW disapproval, and therefore this was not a condition subsequent. Contrast *Gray* v. *Gardner*, 17 Mass. 188 (1821) (an enforceable promise to pay a sum certain for a quantity of oil was made on condition subsequent that the promise would be discharged if a greater quantity of oil arrived at a specified port by a specified time). We think, instead, that the subcontract defined the DPW approval as a condition precedent to the parties' rights and obligations thereunder. "If the condition [were] not fulfilled [by the DPW approval], the

view of these critics, the preferred reasoning would have been to acknowledge that the parties had entered into a contract of which the writing evidenced only a part. Foundation for the admission of parol evidence of the entire agreement (i.e., the condition precedent) would thereby be established, *Imper Realty Corp.* v. *Riss*, 358 Mass. 529, 534-535 (1970); *Antonellis* v. *Northgate Constr. Corp.*, 362 Mass. 847 (1973), and the intention of the parties to be bound by the writing upon the condition being met would be preserved. The condition precedent in *Eckstrom, supra,* under this approach, would be of the second type.

contract, or the obligations attached to the condition, [could] not be enforced." *Massachusetts Mun. Wholesale Elec. Co.* v. *Danvers*, 411 Mass. at 45.

2. Gordon contends that since Maine's interest in the application of its law to this dispute is greater than Massachusetts's interest in having its law applied, the law of Maine should govern. Maine law prohibits enforcement of an indemnity agreement against an employer with workers' compensation insurance unless the agreement contains a clear and express waiver of the immunity provided by the Maine Workers' Compensation Act, Me. Rev. Stat. Ann. tit. 39, § 4 (West 1989). See *Diamond Intl. Corp.* v. *Sullivan & Merritt, Inc.*, 493 A.2d 1043, 1048 (Me. 1985). The subcontract contains no such waiver.

Massachusetts has adopted a "functional choice-of-law approach that responds to the interests of the parties, the States involved, and the interstate system as a whole," where, as here, the parties have failed to agree upon a choice of law. *Bushkin Assocs., Inc.* v. *Raytheon Co.*, 393 Mass. 622, 631 (1985). In the absence of any such agreement, the rights of the parties "are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6." *Id.* at 632, quoting from Restatement (Second) of Conflict of Laws § 188(1) (1971).

We are satisfied that the motion judge considered the relevant factors enumerated in *Bushkin, supra,* including Maine's interest in the administration of its workers' compensation laws. One of the relevant factors, "the protection of justified expectations," Restatement (Second) of Conflict of Laws § 6(2)(d) (1971), warrants attention. Gordon submitted its bid with knowledge that it would be required to obtain insurance coverage to indemnify Brox against all claims. Presumably Gordon's bid was calculated with that expense in mind, especially where Brox and Gordon had a history of working together on Massachusetts public construction projects. Gordon entered this transaction with its eyes open, and the result here fell within the negotiated expectations of the parties. Gordon's contention would not promote that expectation, but rather would topple it and significantly alter the economics of the project. We agree with the motion judge that the Commonwealth's interest in the application of its laws to a subcontract under a public construction project funded by an agency of the Commonwealth pursu-

ant to its authority under State law is paramount in these circumstances. There was no error.

*Judgment affirmed.*