Affirmed and Opinion filed May 29, 2003














Affirmed and
Opinion filed May 29, 2003.

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-02-00777-CV

_______________

 

NCS MANAGEMENT
CORPORATION f/k/a

NATIONWIDE
COLLISION SPECIALISTS, INC., Appellant

 

V.

 

STERLING COLLISION CENTERS, INC., Appellee

_______________________________________________________

 

On Appeal from
the 61st District Court

Harris County, Texas

Trial Court Cause
No. 01-02750

_______________________________________________________

 

O P I N I O N

 

            In this suit over the sale of a
business, NCS Management Corporation f/k/a Nationwide Collision Specialists,
Inc. (“NCS”) appeals a judgment in favor of 
Sterling Collision Centers, Inc. (“Sterling”) on the grounds that: (1)
Sterling failed to satisfy a condition precedent of the parties’ contract; (2)
the trial court improperly dismissed NCS’s tort
claims; (3) the appraisal upon which the judgment was based made an improper
legal determination; and (4) the judgment failed to properly assess the cost of
the appraisal.  We affirm.




                                                                   Background

            In 1998, Sterling purchased
an automobile repair shop from NCS.  The
consideration for this purchase included a promissory note (the “note”)
obligating Sterling to make
five annual installment payments. 
However, the asset purchase agreement for the transaction (the
“agreement”) allowed the final four of these installment payments (the
“payments”) to be reduced if earnings for the first year following the sale
(the “earnings”) fell below a specified amount. 
The agreement also provided an appraisal procedure for the earnings to
be determined independently if the parties could not agree.

            After a dispute arose over whether Sterling was
entitled to reduce the payments, NCS brought this suit, alleging only a claim
for breach of contract.  The trial court
ordered the parties to follow the appraisal procedure set forth in the
agreement, and the appraiser’s report (the “report”) found in favor of the
reduction sought by Sterling.  Following issuance of the report, NCS filed
an amended petition, adding claims for fraud in the inducement and breach of
fiduciary duty.  Eight days later, the
trial court entered a judgment ordering that: (1) “the parties have a judgment
consistent with” the report; (2) costs of court be borne by the party incurring
them; and (3) all other relief be denied.

                                                        Timeliness of Reduction

            NCS’s
first issue contends that Sterling failed to
satisfy the provision of the agreement stating, “Within forty-five days after
the first anniversary of the adjustment date [defined as the first day of the
first calendar month following the Closing Date], the remaining payments due .
. . shall be reduced . . . .” (the “45 day provision”).[1]  NCS contends that this provision created a
condition precedent, requiring Sterling to give
notice of any proposed reduction within that 45 day period, and that Sterling’s failure
to do so precludes it from obtaining any reduction in the payments.

            A condition precedent defines an
event that must occur before a contract becomes effective or an obligation to
perform arises.  Mass. Mun. Wholesale Elec. Co. v.
Danvers, 577
N.E.2d 283, 288 (Mass. 1991).[2]  If the condition is not fulfilled, the
contract, or obligation attached to the condition, may not be enforced.  Id.  An intent to create a condition precedent,
limiting or forfeiting rights under a contract, must be reflected either by
emphatic words or other clear manifestation of such intent in the
contract.  Id.

            NCS cites no authority in which a
contract term similar to the 45 day provision has been held to constitute a
condition precedent.  Unlike the cases
NCS cites,[3] in
which recovery under insurance policies was expressly conditioned on timely
notice or presentation of a claim by the insured, no right or remedy in the
agreement is conditioned on the 45 day provision.  Moreover, in light of other provisions of the
agreement allowing 30 days for NCS to dispute Sterling’s certification of its
earnings, 15 days for the parties to resolve any such dispute, and an
unspecified amount of time for the independent appraisal process to be
conducted, the 45 day provision, as interpreted by NCS, would largely render a
reduction impossible to achieve and those other provisions meaningless.  Under these circumstances, NCS has failed to
demonstrate that the 45 day provision is a condition precedent, and its first
issue is overruled.

                                                    Dismissal of Pending Claims

            NCS’s
second issue contends that its live pleading at the time of judgment contained
claims that were not within the scope of the appraisal and were thereby
dismissed without evidence or a hearing.

            Except within seven days of trial or
thereafter (during which leave of court is required), parties may generally
amend their pleadings at any time that does not operate as a surprise to the
opposing party.  See Tex. R. Civ. P. 63.  A
trial court may conclude that an amendment is, on its face, calculated to
surprise or would reshape the cause of action, prejudicing the opposing party
and unnecessarily delaying the trial.  Greenhalgh v. Serv. Lloyds
Ins. Co., 787 S.W.2d 938, 940 (Tex. 1990); Hardin v. Hardin, 597 S.W.2d 347, 349 (Tex.
1980).  When amendments which introduce
new substantive matter have been refused by a trial court under Rule 63, the
burden is on the complaining party to show an abuse of discretion, rather than
on the opposing party to show surprise.  Hardin, 597 S.W.2d at 349. 

            On appeal, a trial court’s refusal
to allow an amendment will not be disturbed unless the complaining party shows
a clear abuse of discretion.  See id. at 349-50.  A trial court abuses its discretion if it
acts in an arbitrary or unreasonable manner, without reference to any guiding
rules or principles.  In re Nitla S.A.
de C.V., 92 S.W.3d 419, 422 (Tex.
2002).  When reviewing matters committed
to a trial court’s discretion, a reviewing court may not set aside the trial
court's ruling unless it is clear from the record that the trial court could
only reach one decision.  Id.

            NCS originally filed this lawsuit as
a simple breach of contract action to collect on the note.  At the time the appraisal was ordered,
performed, and its report issued, its determination was to be dispositive of NCS’s sole
substantive claim.  Therefore, although
the appraisal was not an arbitration, it would effectively serve as the
adjudication of the only claim in the case. 
In addition, despite knowing of its other claims (for fraud and breach
of fiduciary duty) for the fifteen months the case had been on file, and the
considerably greater body of facts (and thus evidence) necessary to support
those new claims, NCS did not amend its petition to add them until the appraisal
was completed and the trial court was about to enter final judgment upon it,
ending the lawsuit.[4]  The newly filed claims would thus have
essentially taken the case from the “finish line” back to the “starting line,”
requiring the parties and trial court to initiate the lengthy process of
discovery, pre-trial matters, and potentially a full trial.  Under these circumstances, we believe it was
within the trial court’s discretion to conclude that the amendment, on its
face, operated as a surprise to Sterling or
otherwise reshaped the cause of action to Sterling’s
prejudice and, thus, to deny it.  See Greenhalgh, 787 S.W.2d at 940; Hardin, 597 S.W.2d at 349.  Accordingly, NCS’s
second issue is overruled.

                                                 Appraiser Exceeding Authority

            NCS’s
third issue contends that the appraiser exceeded his authority in the manner
that he calculated earnings.  However,
the closest our record comes to reflecting that this complaint was raised in
the trial court is a single sentence in NCS’s motion
for new trial stating, “The Trial Court erred in entering Judgment on the
appraisal . . . on the basis that the appraisal itself fails to properly
allocate expenses.”  We find no portion
of the record at which NCS raised in the trial court the specific grounds for
this contention that it asserts on appeal.[5]

            In addition, the agreement expressly
provides that the appraiser’s determination of earnings “shall be
conclusive.”  Nevertheless, NCS contends
that the appraiser exceeded his authority by failing to follow the method for
determining earnings specified in the agreement.  The agreement provides that (for purposes of
determining the earnings) NCS must “consent to all major overhead expenditures
in writing in excess of $5000 . . . .” 
NCS contends that the appraiser failed to follow this directive in that
he deducted from earnings overhead expenditures for which NCS had not given
written approval.

            However, NCS’s
brief cites no evidence in the record showing any such lack of approval.  In addition, of the expenditures NCS
challenges, most were expressly deemed by 

 class=Section2>

the
appraiser not to be overhead.  NCS has
failed to show error in this determination or that the appraiser (a CPA firm)
lacked authority under the agreement to determine which expenditures
constituted overhead under the circumstances. 
Therefore, rather than exceeding its authority by failing to follow the
calculation method specified in the contract, the appraiser merely applied that
method in a manner with which NCS disagrees.[6]  Accordingly, this issue fails to demonstrate
error by the trial court in confirming the appraiser’s report and is overruled.

                                                   Allocation of Appraiser’s Fee

            NCS’s
fourth issue asserts that the trial court’s judgment, assessing costs of court
against the party incurring them, improperly allocated portions of the
appraiser’s cost to NCS.  Conversely, at
oral argument, NCS’s counsel argued that the
appraiser’s fee was not a cost of court at all so as to even be included in the
court’s assessment of costs.  Moreover,
the bill of costs in our record does not include any amount for the appraiser.[7]  Because it thus lacks a factual basis in the
record, NCS’s fourth issue is overruled, and the
judgment of the trial court is affirmed.

 

 

                                                                                    

                                                                        /s/        Richard H. Edelman

                                                                                    Justice

 

Judgment rendered and Memorandum
Opinion filed May 29,
 2003.

Panel consists of Justices Hudson,
Edelman and Draughn.[8]











[1]           Although not material to our
disposition, it is not apparent from NCS’s brief
whether this issue challenges the trial court’s decision to order the appraisal
or to enter judgment on it.





[2]           The note and agreement each recite
that they are governed by the law of Massachusetts.





[3]           See Barton
v. Auto. Ins. Co., 34 N.E.2d 516 (Mass. 1941); Nadeau v. Ins. Co. of State of Penn., 131 N.E.
69 (Mass. 1921); Wood v. Roy Lapidus,
Inc., 413 N.E.2d 345 (Mass. App. Ct. 1980). 





[4]           NCS claims that the case was abated
when the appraisal was ordered.  However,
the only portion of the record it cites to support this contention is the trial
court’s docket sheet, which makes no mention of ever abating the case or, for
that matter, unabating it before NCS’s
amended petition was filed.





[5]           See Tex. R. App. P. 33.1.





[6]           See
Cambridge St. Metal Co. v. Corrao, 566
N.E.2d 1145, 1149 (Mass. App. Ct. 1991).





[7]           In addition, although NCS’s petitions claimed principal and interest under the
note and statutory attorney’s fees, they not only failed to allege facts or
assert a claim for the appraiser’s fee, but the amended petition expressly
claimed that the appraisal provision did not apply.  Nor have we found any other portion of the
record at which a claim for this cost was asserted, or any evidence that it was
paid by NCS so as to be recoverable by it. 
Moreover, if the appraiser’s report establishes that the cost is to be
paid by Sterling, as NCS contends, then the trial court’s judgment “consistent
with” that report so orders.  Either way,
NCS has failed to establish that the trial court failed to award NCS the
appraiser’s fee or that it erred if it did so.





[8]           Senior Justice Joe L. Draughn sitting by assignment.