Welsh, J.
This is a negligence action to recover damages for injuries sustained
by the plaintiff while shopping in the defendant’s supermarket in Canton. The answer essentially denied the elements required to be proved in a negligence action, asserted that the plaintiff was guilty of negligence to such degree that she is barred from recovery, and alleged, alternatively, that the negligent act or omission was perpetrated by one for whose conduct the defendant was not legally responsible. Both parties duly demanded trial by jury.
A jury trial was begun on January 3, 2005. The trial judge allowed the defendant’s motion for a directed verdict at the conclusion of the plaintiff’s case. The plaintiff has appealed that ruling and the judgment of dismissal that followed. We reverse.
A motion for directed verdict must be denied if “anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff.” Poirier v. Town of Plymouth, 374 Mass. 206, 212 (1978), quoting Raunela v. Hertz Corp., 361 Mass. 341, 343 (1972). We summarize the evidence in the light most favorable to the plaintiff. See Balkin v. Frank M. Katz, Inc., 373 Mass. 419, 420 (1977).
On May 25, 2002, at approximately 5:30 p.m., the plaintiff entered the defendant’s store in Canton to do some shopping. She proceeded into aisle seven which was stocked with juice and assorted canned goods. Aisle seven was not near the section of the store in which produce was displayed for sale. At this point, the evidence diverges. The plaintiff testified that she and her daughter encountered Diane Doyle (“Doyle”), an assistant manager. Doyle did not testify at trial, although she was present in the courtroom. However, her written incident report, dated the same date as the plaintiff’s fall, was admitted into evidence. According to the report, Doyle was “passing” aisle seven when she noticed the commotion generated by the plaintiff’s fall. According to the testimony of the plaintiff, which was substantially corroborated by her daughter, she passed Diane Doyle as Doyle was exiting the aisle in question. The plaintiff proceeded a short distance into the aisle, about three feet or so, and stepped on a piece of romaine lettuce. The plaintiff did not see the piece of lettuce until after the fall. The plaintiff had not been anywhere near the produce section, and did not know how the offending piece of lettuce came to be on the aisle floor or how long it had been there. Her shoe came off during the episode. When she retrieved it, the piece of lettuce was still attached to the heel.
The leaf of romaine lettuce which occasioned the fall was wet and slimy in appearance, darker than romaine lettuce displayed elsewhere in the store for sale. It appeared rust-colored around its edges and there were holes in it. At the site of the fall, there were skid marks two or three feet in length. When the plaintiff *37 slipped on the lettuce, the shopping cart she had been using tipped over, twisting her right foot. She injured her right wrist, lower back and right hip.
1. Where a business visitor sustains injuries after slipping on a substance, she may establish the defendant’s negligence either by proving that the defendant or its employees had actual knowledge of the existence of the substance, or by showing that tire substance was present on the floor for a sufficient length of time that the defendant or its employees ought, in the exercise of due diligence, to have discovered it. Oliveri v. Massachusetts Bay Transp. Auth., 363 Mass. 165, 167 (1973). The time permitted to a defendant to learn of the existence and location of an offending substance will depend on a number of factors, such as the number of employees present at the time, their physical proximity to the location of the substance, and, in general, the likelihood they would become aware of the substance in the course of their duties. See Deagle v. Great Atl. & Pac. Tea Co., 343 Mass. 263, 265 (1961).
The proximity in location and in time of Doyle, an assistant manager of the store whose duties included superintendence of cleaning and the correction of conditions creating a hazard to customers, were properly questions of fact for the jury. On this record, it cannot rightly be said that, viewing the evidence in a light most favorable to the plaintiff, no rational trier of fact could conclude that the defendant did not have sufficient notice of the offending condition. Both the plaintiff’s testimony and her daughter’s place a responsible store employee within a few feet of the hazardous condition that led to the plaintiff’s fall. While Doyle’s incident report contradicts this testimony, we reiterate that the plaintiff is entitled to have the evidence considered in the light most favorable to her case upon appellate review of the allowance of a directed verdict against her.
2. Evidence of dirt, trampling and decay may be some indication of how long an organic substance had been present on the floor. Oliveri, supra at 168-169, and cases cited. Although the time element alone is rarely dispositive, it may aid in the assessment of the opportunity of discovery open to the defendant when it is considered in conjunction with other factors, such as the physical proximity of store employees. Id. at 167. Cases analyzing the interplay between the condition of the foreign substance and an employee’s opportunity for discovery are collected in Hennessey v. Stop & Shop Supermarket Co., 65 Mass. App. Ct 88, 93-95 (2005). Our canvass of the record in this case persuades us that there was, indeed, a question of fact for the jury on the issue of liability Thus, as it cannot be said that no rational view of the evidence would have permitted a finding of negligence, the motion for a directed verdict should have been denied. Cf. Goulart v. Canton Hous. Auth., 57 Mass. App. Ct. 440, 441 (2003).
3. We deem it helpful to comment upon a procedural aspect of this case. Because it has been determined that the judge erred in directing a verdict for the defendant at the close of the plaintiff’s case, it now becomes necessary to order a new trial. This might have been avoided if, instead of removing the case from the jury’s consideration, the judge had opted for submitting the case to the jury. If the jury had then returned a verdict for the defendant, the issue of the sufficiency of the evidence to support that verdict would have become moot. If the jury returned a verdict for the plaintiff instead and awarded damages, the judge might still have decided that there was insufficient evidence to warrant such a verdict, and then exercised his option to enter judgment for the defendant notwithstanding the verdict. Had the latter approach been taken, and if an appellate tribunal disagreed with the trial judge’s conclusion, the verdict of the jury could have been reinstated and a new trial avoided. The efficiency of this salutary approach is, thus, self-evident. Valuable court resources, including jury time, are better utilized, see McAllister v. Boston Hous. Auth., 429 Mass. 300, 301 (1999), and a trial record is created that permits an appellate court to terminate the litigation with finality without the need for a new trial in the event of reversal of a directed verdict. Therefore,
*38 [t]he better procedure in a case in which it is a close question whether the standard for granting a directed verdict is met is to allow the matter to go to the jury. If the judge then decides that the jury’s verdict cannot stand, a motion for judgment notwithstanding the verdict may be allowed.
Smith v. Ariens Co., 375 Mass. 620, 627 (1978).
The judgment for the defendant is vacated, the allowance of the defendants directed verdict motion is reversed, and the case is returned to the Stoughton Division of the District Court Department for a new trial.
So ordered.