Hand, J.
Plaintiff Rachael’s Boutique, Inc. (“Rachael’s”) sells clothing, jewelry, and other merchandise. At the times relevant to this action, Rachael’s permitted customers, including defendant Angelina Cabral (“Cabral”), to establish and maintain credit accounts for purchases made at the business.
In June, 2010, Rachael’s filed suit against Cabral in the New Bedford District Court, alleging that Cabral owed Rachael’s $15,763.00 for goods sold and delivered on an open account. Cabral counterclaimed pursuant to G.L.c. 93A After trial, the jury returned a verdict for Rachael’s against Cabral on both Rachael’s claims and Cabral’s counterclaims.
Cabral has appealed the verdict against her on Rachael’s claims on two grounds. First, she argues that the evidence at trial was insufficient to support the jury’s finding of a debt owed on an open account. Second, she argues that the trial judge erred in his instructions to the jury, specifically, that the judge should have instructed the jury on the statute of limitations and on the statute of frauds.
There was little dispute at trial that Cabral had been a regular customer at Rachael’s for a period of years before Rachael’s filed its complaint against her in 2010. While there was evidence that Cabral sometimes paid cash for her purchases *116 at Rachael’s, Rachael’s offered evidence that she also purchased many items on a credit account with the business. Records maintained by Rachael’s and introduced at trial suggested that Cabral carried a credit balance on an account with Rachael’s from at least 2004 through 2007, with individual credit purchases ranging from $50.00 to over $5,000.00.
Joe Costa (“Costa”), Rachael’s owner, testified that when a customer made a purchase, the salesperson would fill out a receipt with a carbon duplicate, keeping one copy and providing the other to the customer. Rachael’s introduced into evidence approximately twenty-seven such receipts for charges Rachael’s attributed to Cabral.[1] The receipts were not numbered, and while several of the receipts had Cabral’s name written on them, none was signed by Cabral.[2] Costa, through whom the receipts were introduced without objection, testified that the receipts were completed by the salespeople working at Rachael’s at the time each purchase was made. None of the employees who made the entries on the receipts and account cards testified at trial.
Rachael’s witness, Costa, explained that when a customer made a purchase on credit, the salesperson making the sale would record the credit on an account card dedicated to that particular customer. Any payments made on the account would also be recorded on the account card. When a given card was filled, the balance from the card would be carried over to a new card, and the credit and debit entries would be continued on the new card.
In Cabral’s case, although Rachael’s introduced receipts for certain purchases as far back as 2001, Costa testified that Cabral’s early account cards had been lost. The first account card introduced into evidence at trial began with an entry dated January 5, 2004, carrying over a balance of $13,587.00. Costa could not provide evidence of the accuracy of his store’s accounting that generated the $13,587.00 balance, although the account cards were introduced without objection.
Rachael’s introduced additional account cards related to Cabral’s purchases and payments after January 5,2004, documenting Cabral’s earliest recorded payment on January 11,2004, and her last payment on the account on January 15,2007. The evidence of whether Cabral accepted the particular items noted on the receipts introduced at trial and the account cards, and of whether she paid for those items, was sparse. In most cases, Costa could not identify the merchandise associated with particular entries on the account cards. Cabral provided no information about what she bought, although she denied having purchased some particular items, notably items of jewelry for herself and her son.
The account cards indicated, and Costa testified, that Cabral’s account had a credit balance after the last recorded payment, and that the balance at the time of trial was $15,813.00. The account cards did not identify the items Cabral purchased, but *117 only the amount of each credit. Cabral did not sign the account cards, and there was no evidence that she ever conceded the accuracy of the balance carried over and dated January 5, 2004, or any other entry on any account card kept by Rachael’s. Rachael’s introduced several receipts for purchases it claimed Cabral made on account, but did not produce receipts for all such purchases. Further, the receipts did not indicate whether Cabral made any particular purchase documented using Rachael’s credit or in some other way. Rachael’s conceded that it had no receipts or account cards signed by Cabral for any of her purchases at the boutique.
Cabral moved for a directed verdict at the close of Rachael’s evidence, arguing that Rachael’s had failed to present sufficient evidence from which the jury could find a proper basis for the calculation of the balance dated December 5,2004 and carried over on the account card. The trial court denied that motion and her subsequent directed verdict motion at the close of all the evidence; and Cabral’s rights on the issue were preserved. See Chelsea Rous. Auth. v. Fontes, 2012 Mass. App. Div. 7, 9 (defendant’s motion for directed verdict preserved right of appeal on sufficiency of the evidence).[3]
At trial, Cabral testified that she began shopping at Rachael’s in 2006, denying that she made purchases as early as 2004. She testified that she “never owed more than $2,000” on account with Rachael’s. It was undisputed that Cabral did not make any purchases from or payments to Rachael’s after July 20, 2007. Cabral first testified that “[she] knew [she] had paid everything,” but conceded that when the account “ended” in 2007, she owed “[a] lot of money” to Rachael’s. At a minimum, Cabral disputed that she owed the amount claimed by Rachael’s.
After trial, Cabral moved for a new trial and for judgment notwithstanding the verdict on grounds including those at issue in this appeal. The court denied Cabral’s motions.
1. Standard of review. “In reviewing the denial of a motion for judgment notwithstanding the verdict, we ask whether, viewed in the light most favorable to the non-moving party, the evidence is sufficient to support the verdict.” Reading Co-op. Bank v. Suffolk Constr. Co., 464 Mass. 543, 556-557 (2013). See also Anderson v. Peter Pan Bus Lines, Inc., 2000 Mass. App. Div. 221, quoting Hanover Ins. Co. v. Sutton, 46 Mass. App. Ct. 153, 166 (1999).
2. Sufficiency of evidence on debt owed on open account. To recover on a theory of an open account, the plaintiff is required to prove the well-known elements of a contract, see G.L.c. 260, §6 (mutual and open account current is form of contract action); Howland v. Stowe, 290 Mass. 142, 147 (1938) (same), including offer, acceptance, and consideration. Vasconcellos v. Arbella Mut. Ins. Co., 67 Mass. App. Ct. 277, 280 (2006), citing Haverhill v. George Brox, Inc., 47 Mass. App. Ct. 717, 720 (1999). The plaintiff must also prove the correctness of the account and the reasonableness of the charges. See Howland, supra at 147-148 (open and mutual account is an action for balance due on account); Penniman v. Rotch, 44 Mass. 216, 219-220 (1841) (distinguishing between account stated and open and running account, and noting that in either case, plaintiff must prove his own charges on account). In this case, Cabral disputed the correctness of the accounting, generally, although she conceded the accuracy of some of the individual entries on the account cards admitted into evi *118 dence. The critical issue was Rachael’s inability to produce any evidence — for example, account cards showing charges and payments before January 5, 2004, receipts for transactions before that time, or testimony of the salespeople involved in sales before that date — from which the jury could have determined that the balance carried forward and dated January 5, 2004 was accurate. While, as the judge pointed out in his thoughtful decision denying the defendant’s motion for new trial, the jury was free to accept as truthful Rachael’s witness’ testimony about Rachael’s practice of carrying over balances from one account card to the next, there was no evidence from which the jury could determine whether the balance carried correctly reflected Cabral’s charges and payments on the account, or the reasonableness of those charges. See Great Seneca Fin. v. Felty, 170 Ohio App. 3d 737, 743-744 (2006) (summary judgment for plaintiff on credit card claim vacated where plaintiff failed to provide documentation of the credits and debits leading to claimed starting balance of assigned account, thus making impossible a proper calculation of total amount due).
The motion for judgment notwithstanding the verdict should have been allowed on this basis.[4]
3. Jury instruction on statute of limitations.
The burden of proving that an action is commenced in a timely fashion is upon the plaintiff where the defense of the statute of limitations is duly pled. Chandler v. Dunlop, 311 Mass. 1, 7 (1942). A payment on account of a debt before the expiration of the time allowed to commence an action may revive the debt. Boles v. Katz, 340 Mass. 406, 407 (1960). The plaintiff has the burden of proving facts that will take the case out of the statute of limitations. Williams v. Ely, 423 Mass. 467, 474 (1996).
Norfolk Fin. Corp. v. Wynn, 2003 Mass. App. Div. 145 (2003).
Where, as here, a debtor makes a partial payment on an account consisting of multiple transactions, “[t]he payment is an acknowledgment of the existence of the indebtedness, and raises an implied promise at that time to pay the balance.” Boles v. Katz, supra at 407-408, quoting Day v. Mayo, 154 Mass. 472, 474 (1891). As Cabral points out, “in order to have this effect the circumstances attending the part payment must be such as to support a fair and reasonable inference that the debtor intended to renew his promise of payment.” Provident Inst, for Sav. v. Merrill, 311 Mass. 168,171 (1942). The evidence at trial suggested that Cabral made payments as late as January 15, 2007, and included Cabral’s explicit acknowledgement that in 2007, when her credit relationship with Rachael’s ended, she owed “ [a] lot of money” to that business. While that evidence was sufficient to support the inference that Cabral’s payments on the account were intended, at least as of January 17, 2007, to *119 permit her to continue her business with Rachael’s, and to renew her promise to continue to pay on the account, it was not dispositive on the point. Absent any concession from Cabral, whether Cabral did intend the payments to open the door to her continued credit purchases from Rachael’s was a question of fact for the jury, as was the issue of whether the statute of limitations was tolled by those payments. The jury should have been instructed on the statute of limitations, and the court’s failure to do so was error. See Dahms v. Cognex Corp., 455 Mass. 190, 207 (2009), citing Blackstone v. Cashman, 448 Mass. 255, 270 (2007) (error in jury instructions is grounds for setting aside verdict if result might have differed absent error).
4. Jury instruction on statute of frauds pertaining to sale of goods over $500.00. General Laws c. 106, §2-201[5] requires that a contract for the sale of goods costing $500.00 or more must generally be in writing to be enforceable. It is undisputed that *120 the parties did not have written contracts for any purchases that Cabral made from Rachael’s. In all but a very limited number of instances, Rachael’s was also unable to introduce evidence that Cabral accepted particular goods that otherwise would fall within the statute, or that she paid for such goods and that Rachael’s accepted the payments for those particular items.[6] The enforceability of any agreement between the parties with regard to items priced at $500.00 or more was, therefore, a live issue at trial; Cabral was entitled to a jury instruction on the statute of frauds. We cannot say that the jury would have returned the verdict that it did had it found the statute of frauds to have applied to some or all of the transactions alleged between the parties. Accordingly, the court erred in failing to give the requested instruction. See Dahms, supra at 207.
The denial of Cabral’s motion for judgment notwithstanding the verdict is reversed. Judgment to be entered for defendant Cabral.
So ordered.

 Approximately nineteen of these receipts were dated before the January 5, 2004 date on which the first account card began; the total of those receipts was significantly less than the balance noted on January 5, 2004. Some, but not all, of the remaining eight receipts correspond to entries on the existing account cards. We appreciate the trial judge’s detailed analysis of the account cards appended to his written denial of Cabral’s motion for a new trial.

 Most, but not all, of the receipts introduced into evidence identified Cabral as the customer in the transaction.

 The denials of Cabral’s directed verdict motions themselves are not part of this appeal.

 In this case, where Cabral presented a “close question” on her motion for directed verdict, the trial judge followed the “better procedure” of allowing the case to go to the jury. Rollins v. Shaw’s Supermarket, Inc., 2007 Mass. App. Div. 36, 38, quoting Smith v. Ariens Co., 375 Mass. 620, 627 (1978). Our decision to reverse the denial of the motion for judgment notwithstanding the verdict makes it unnecessary for us to act on the defendant’s appeal of the denial of a motion for a new trial. See id. at 37.

 The statute provides in relevant part:
§2-201. Formal Requirements: Statute of Frauds.
(1) Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing....
(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable ...
(b) if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; or
(c) with respect to goods for which payment has been made and accepted or which have been received and accepted (section 2-606).
Section 2-606 provides:
§2-606. What Constitutes Acceptance of Goods.
(1) Acceptance of goods occurs when the buyer
(a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity; or
(b) fails to make an effective rejection (subsection (1) of section 2-602), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or
(c) does any act inconsistent with the seller’s ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him.
(2) Acceptance of a part of any commercial unit is acceptance of that entire unit.

 As Comment 2 to G.L.c. 106, §2-210 indicates, a writing is unnecessary where the plaintiff can show an adequate substitute:
2. “Partial performance” as a substitute for the required memorandum can validate the contract only for the goods which have been accepted or for which payment has been made and accepted.
Receipt and acceptance either of goods or of the price constitutes an unambiguous overt admission by both parties that a contract actually exists....